**PUBLISH**

March 20, 2020

UNITED STATES COURT OF APPEALS

Christopher M. Wolpert
Clerk of Court

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRANDON THOMAS FINNESY,

Defendant - Appellant.

No. 18-3045

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:17-CR-10010-EFM-1)**

---

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender with him on the briefs), Office of the Federal Public Defender, Kansas City, Kansas, for Defendant-Appellant.

Carrie N. Capwell, Assistant United States Attorney (Stephan R. McAllister, United States Attorney, and Jason Hart, Assistant United States Attorney on the brief), Office of the United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

---

Before **HOLMES**, **McKAY**, and **KELLY**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Brandon Thomas Finnesy appeals from his conviction and sentence for escape from custody. As to his conviction, which was entered upon his guilty plea, Mr. Finnesy contends that he should be permitted to withdraw his guilty plea because the magistrate judge who conducted his plea colloquy lacked "jurisdiction" to accept his plea. As to his sentence, he maintains that the district court erred in applying the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") in his case. For the reasons explicated *infra*, we disagree. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment.

## I

In 2015, Mr. Finnesy was charged and convicted of misprision of a felony, in violation of 18 U.S.C. § 4.[1] He was subsequently sentenced to twenty-eight months' imprisonment, with a scheduled release date of March 22, 2017. A few months prior to Mr. Finnesy's scheduled release date, in late 2016, he was transferred to a halfway house to serve the remainder of his sentence. In January 2017, however, Mr. Finnesy left the halfway house and failed to return. Several weeks later and still at large, Mr. Finnesy was indicted by a federal grand jury on one count of escape from custody, in violation of 18 U.S.C. § 751.

---

[1] As the facts underlying Mr. Finnesy's misprision-of-a-felony offense are not germane to this appeal (and the parties do not contest these facts), we do not discuss them herein.

A few days after Mr. Finnesy's indictment, in early February 2017, Kansas law enforcement arrested Mr. Finnesy, along with two other suspects, following a car chase; law enforcement recovered methamphetamine and firearms in the vehicle and near the scene of the chase. In that connection, a Kansas state court convicted him of one count of possession of a controlled substance and one count of possession of a firearm by a convicted felon. He was sentenced to forty-eight months' imprisonment in July 2017, and several weeks later was admitted to a state correctional facility to begin serving his sentence on these two state offenses.

In November 2017, while Mr. Finnesy was serving his state sentence, the federal government took steps in federal district court to pursue its prosecution of Mr. Finnesy for his escape-from-custody offense. But several weeks before his trial was slated to begin on that offense, Mr. Finnesy entered into a plea agreement with the government, whereby he agreed to plead guilty to escape from custody. The government, for its part, agreed to recommend the maximum applicable offense-level reduction for acceptance of responsibility, as well as "to join [Mr. Finnesy] in recommending his sentence be served concurrent to his [state] sentence"—but with several conditions. R., Vol. I, at 20 (Plea Agreement, dated Dec. 20, 2017). Specifically, the government's fulfillment of its obligations under the plea agreement was contingent on, *inter alia*, Mr. Finnesy "continuing

3

to manifest an acceptance of responsibility" and not "engag[ing] in additional criminal conduct" in advance of sentencing. *Id.* at 20–21. If Mr. Finnesy failed to adhere to these conditions, the government reserved the right to petition the court for a hearing to determine if he had breached the plea agreement. *Id.* If the district court were to then conclude that he had in fact done so, the government would be released from its obligations under the plea agreement.

In connection with his guilty plea, Mr. Finnesy also signed a document entitled "Consent to Proceed with Guilty Plea Before a United States Magistrate Judge in a Felony Case." Supp. R. at 1 (Consent to Proceed Form, filed Dec. 20, 2017). In so signing, Mr. Finnesy affirmatively represented that he had been informed of his right to "enter" a guilty plea before a U.S. district judge, and that he was waiving that right and consenting to "enter[]" a guilty plea before a U.S. magistrate judge. *Id.*

A magistrate judge presided at Mr. Finnesy's plea hearing. During the hearing, the magistrate judge confirmed that Mr. Finnesy had agreed to have a magistrate judge "conduct[]" the hearing, and accepted the signed Consent to Proceed form. R., Vol. III, at 64–65 (Tr. Plea Hr'g, dated Dec. 20, 2017). At the end of the hearing, Mr. Finnesy pleaded guilty, and the magistrate judge "accept[ed]" the guilty plea. *Id.* at 83–84.

In the lead-up to sentencing on Mr. Finnesy's escape-from-custody conviction, the parties submitted several filings laying out their recommendations on Mr. Finnesy's sentence. These filings included Mr. Finnesy's Motion for Downward Variance and Sentencing Memorandum. Therein, Mr. Finnesy addressed, in relevant part, the parties' recommendation for a concurrent sentence, requesting that the district court "impose a sentence concurrent with his State case that he is presently serving." *Id.*, Vol. I, at 27–28 (Mot. for Downward Variance & Sentencing Mem., filed Feb. 21, 2018).

The day after Mr. Finnesy's submission of his motion, the United States Probation Office filed a Presentence Investigation Report ("PSR") in connection with Mr. Finnesy's sentencing on the escape-from-custody offense. As relevant here, the PSR calculated a base offense level of thirteen under U.S.S.G. § 2P1.1(a)(1),[2] and recommended a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), resulting in a total offense level of eleven. And, as to the issue of whether Mr. Finnesy's sentence should run consecutively to or concurrently with his state sentence, the PSR acknowledged the parties' recommendation for a concurrently run sentence, but the PSR itself

---

[2]    The Probation Office relied on the 2016 edition of the Guidelines in computing Mr. Finnesy's Guidelines sentencing range. Mr. Finnesy does not challenge this decision on appeal. Therefore, in resolving his sentencing challenges, we also rely on this edition of the Guidelines.

made no recommendation on this issue. Rather, insofar as the PSR did address Mr. Finnesy's state sentence, it did so in the context of recounting Mr. Finnesy's criminal history (including the underlying state offenses) and in assigning criminal-history points to the state offenses. Mr. Finnesy's counsel ultimately did not lodge any objections to the PSR's above-noted calculations or recommendations. *See* R., Vol. II, ¶ 139, at 39 (Modified PSR, filed Feb. 22, 2018); *id.* (in section of report entitled, "Objections," noting that "[c]ounsel, for the defendant, has no objections to the presentence investigation report").

Shortly thereafter, the government filed a Motion to Determine Breach of Plea Agreement (the "motion to determine"). In so moving, the government explained that it had been informed of Mr. Finnesy's recent involvement in a "prisoner altercation" in which he had "possess[ed] a 'shank' and us[ed] it to harm another inmate at the detention facility where [Mr. Finnesy] [was] housed." R., Vol. I, at 30 (Mot. to Determine, filed Feb. 28, 2018). These actions, the government contended, constituted a breach of the plea agreement's condition that Mr. Finnesy not "engage[] in additional criminal conduct," *id.* (quoting R., Vol. I, at 20–21), and that this breach, in turn, relieved the government of its obligation under the agreement "to join [Mr. Finnesy] in recommending concurrent sentencing with [the state sentence]," *id.* The government requested that the

6

district court so find, and that it do so at Mr. Finnesy's upcoming sentencing hearing.

To that end, the district court took up the government's motion to determine several weeks later at Mr. Finnesy's sentencing hearing. There, the government adduced evidence of the alleged prisoner altercation in which Mr. Finnesy had purportedly used a shank to attack another inmate, including testimony on the incident, a still shot from a video of the altercation, and the shank itself. The government argued that based on this evidence, it was clear that Mr. Finnesy had committed battery, in violation of the plea agreement's condition that he not commit additional criminal violations pending sentencing. The government also presented testimony from a captain at the Butler County Sheriff's Office, who averred that Mr. Finnesy had attempted to traffic contraband by surreptitiously giving prescription medication to another inmate; this conduct, too, the government argued, constituted a criminal violation, in breach of the plea agreement. Mr. Finnesy's counsel rejoined that the video did not show a shank in Mr. Finnesy's hand, and that, given the jail setting and "other surrounding circumstances," Mr. Finnesy's actions during the incident in question did not qualify as battery. *Id.*, Vol. III, at 38–39 (Tr. Sentencing Hr'g, dated Mar. 6, 2018). Mr. Finnesy's counsel also asserted that the only evidence of contraband trafficking was "essentially hearsay statements," in the form of other

7

officers' reports to which the captain then attested.  *Id.* at 39.  The district court

agreed with the government, holding that Mr. Finnesy's actions involving the

shank constituted battery and that he had trafficked contraband.  Then, "on the

basis of this evidence that [the district court] heard," the court made the following

ruling:

> I am going to grant the [g]overnment's motion that Mr. Finnesy
> has breached his plea agreement; therefore, [he] is not entitled to
> the acceptance of responsibility reduction of two points in this
> case, and that's going to adjust his offense level to a level 13,
> criminal history category VI.

*Id.* at 40.  Thus, having determined that Mr. Finnesy breached the plea agreement,

the district court then granted the government's request that it be released from its

plea-agreement obligation to join Mr. Finnesy in recommending that the instant

sentence run concurrently with the state sentence.  The district court concluded its

ruling by asking the parties, "[are there] [a]ny other issues with respect to the

presentence investigation report?"  Mr. Finnesy's counsel responded, "No, Your

Honor."  *Id.* at 41.

The court then shifted its attention to other sentencing issues, including, as

relevant here, whether to order that Mr. Finnesy's sentence on the instant escape-

from-custody offense run consecutively to or concurrently with his undischarged

sentence on his state offenses.  The government recommended a consecutive

sentence, emphasizing Mr. Finnesy's lengthy criminal history.

8

Mr. Finnesy's counsel countered that committing an offense while in escape status deprived Mr. Finnesy of the benefit of U.S.S.G. § 2P1.1(b)(3). This section typically provides for a four-level reduction for a defendant who (like Mr. Finnesy) escapes from a halfway house. But there is an exception, which, if triggered, renders that four-level reduction inapplicable: "if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more." U.S.S.G. § 2P1.1(b)(3). Here, Mr. Finnesy's defense counsel noted, his commission of the state offenses while in escape status implicated that exception, rendering § 2P.1(b)(3)'s four-level reduction inapplicable. In that regard, in arguing against the imposition of consecutively run sentences (among other sentencing matters), Mr. Finnesy's defense counsel explained that the Guidelines range for Mr. Finnesy's escape-from-custody offense was already "higher than most escape, walk-away cases." R., Vol. III, at 46. He thus requested that if the court ultimately were to decide not to run the sentences concurrently, then that it sentence Mr. Finnesy at the low end of the Guidelines range. *See id.* at 46–47.

Having heard the parties' arguments, the district court announced a tentative sentence. It began by observing that Mr. Finnesy's offense level was thirteen (as modified upon the loss of acceptance-of-responsibility credit), that his criminal history category was VI, and that this yielded a Guidelines range of

thirty-three to forty-one months' imprisonment. Nonetheless, the court noted that it intended to impose a sentence of sixty months—reflecting the statutory maximum sentence—in view of "the inadequacy of his criminal history category, as well as the nature of his refusal to accept responsibility even on a going-forward basis." *Id.* at 53.

The district court then took up Mr. Finnesy's request for a concurrent sentence. First, the court acknowledged that the government had previously joined Mr. Finnesy in recommending a concurrent sentence (prior to the government's learning of Mr. Finnesy's alleged altercation with another prisoner, and then, as a result, asking that it be released from its obligation to join Mr. Finnesy in that recommendation). *Id.* at 55. However, the court noted that even if the government had continued to recommend concurrent sentences, it was "not sure [it would] have granted that request in any event" because Mr. Finnesy's previous convictions on the state offenses did not "really relate[] to the offense that he's being sentenced for here." *Id.* Accordingly, the district court concluded, it was "going to order that his sentence in this case is to be consecutive to the sentence he's to serve [for his previous state offenses]." *Id.*

The district court solicited objections to the tentative sentence. Mr. Finnesy's counsel asserted that "the sentence at the statutory maximum and consecutive to what he's already serving is substantively unreasonable, and I

would object." *Id.* at 56. Mr. Finnesy's counsel then continued, "I would also submit that procedurally . . . the sentence is also unreasonable." *Id.* The district court inquired as to "the nature of [counsel's] procedural objections," to which he responded, "[t]he ability of the -- just some of the objections that I had with respect to the testimony that was brought out in the hearing today." *Id.* The district court stated that it saw no "procedural irregularity" in the conduct of the hearing, noting particularly that Mr. Finnesy's counsel received a "full opportunity" to cross-examine witnesses and make objections during the hearing. *Id.* Mr. Finnesy's counsel advised that he would seek to raise on appeal his procedural objections "with respect to those issues . . . that went against [him]." *Id.* The district court overruled the objections, stating that "the fact that [Mr. Finnesy's counsel] lost an objection" was not a "procedural irregularity." *Id.*

The district court then imposed a sixty-month consecutive sentence, in accordance with its tentative sentence. In doing so, it noted that the PSR had been "adjusted pursuant to the [g]overnment's motion which [the district court] sustained to revoke acceptance of responsibility." *Id.* at 57.

Consistent with its statements at the hearing, the district court entered judgment, and Mr. Finnesy timely appealed.

## II

On appeal, Mr. Finnesy raises three claims of error. The first of these three claims concerns his conviction, and the second and third claims concern his sentence. As to Mr. Finnesy's conviction, he argues that magistrate judges do not have the authority to accept guilty pleas and adjudicate a defendant guilty, and that the magistrate judge here thus lacked jurisdiction to enter his guilty plea. As to Mr. Finnesy's sentence, first, he argues that the district court, in determining whether to run the instant offense consecutively to or concurrently with his undischarged state sentence, erroneously failed to apply U.S.S.G. § 5G1.3(b). Mr. Finnesy's second challenge to his sentence posits that the district court erred in denying him an acceptance-of-responsibility downward adjustment under U.S.S.G. § 3E1.1(a) "solely" because the government refused to recommend such a reduction.

We reject Mr. Finnesy's claims in full, and we therefore affirm the district court's judgment as to Mr. Finnesy's conviction and sentence.

## A

We first address Mr. Finnesy's contention that he is entitled to withdraw his guilty plea because a magistrate judge lacks "jurisdiction" or "authority" to "accept a guilty plea" and "adjudicate[] him guilty." Aplt.'s Opening Br. at 10, 15. We reject this argument.

**1**

Before we turn to the merits of this issue, however, we consider the appropriate standard of review. Mr. Finnesy candidly acknowledges that he did not raise his challenge to the magistrate judge's authority before the district court and that "[t]ypically, when a party fails to raise an issue below, the party has forfeited the issue, and this Court reviews for plain error." Aplt.'s Opening Br. at 10; *see, e.g.*, *United States v. Garcia*, 936 F.3d 1128, 1131 (10th Cir. 2019), *petition for cert. docketed*, No. 19-7991 (10th Cir. Mar. 16, 2020) (noting that "[a]s a general matter, arguments not raised before the district court are forfeited on appeal"); *see also United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (applying "rigorous" plain-error standard of review to forfeited error (quoting *United States v. Bader*, 678 F.3d 858, 894 n.24 (10th Cir. 2012))). Nevertheless, Mr. Finnesy maintains that plain-error review does not apply here, because jurisdictional issues cannot be waived or forfeited. Aplt.'s Opening Br. at 10–12. Therefore, he asks us to review his challenge de novo. *See, e.g.*, *United States v. Brown*, 164 F.3d 518, 521 (10th Cir. 1998) (holding that "[w]e review [defendant's] challenge to the district court's jurisdiction de novo"); *accord United States v. Tolliver*, 730 F.3d 1216, 1224 (10th Cir. 2013); *United States v. Kammersell*, 196 F.3d 1137, 1138 (10th Cir. 1999).

In support of his argument, Mr. Finnesy relies on two Supreme Court decisions that, he points out, "expressly refer[] to a magistrate judge's authority in jurisdictional terms." Aplt.'s Br. at 11. The first of these two cases, *Gomez v. United States*, took up the question of whether a magistrate judge in a defendant's felony case has the authority to preside over jury selection absent the defendant's consent. 490 U.S. 858 (1989). In determining that a magistrate judge does not have such authority, the *Gomez* Court assessed the proper scope of a magistrate judge's duties in terms of "jurisdiction," asserting that a magistrate judge "exceeds his *jurisdiction* by selecting a jury" without the defendant's consent. *Id.* at 865–72, 876 (emphasis added).

The second case, *Peretz v. United States*, considered whether a magistrate judge had the authority to select a jury in a felony case where, in a departure from *Gomez*, the defendant *had* provided consent. 501 U.S. 923 (1991). Again, in addressing this question—this time answering in the affirmative—the Supreme Court spoke in terms of "jurisdiction," explaining that "[w]hen a defendant does consent to the magistrate's role, the magistrate has *jurisdiction* to perform this additional duty." *Id.* at 935–36, 940 (emphasis added). At bottom, Mr. Finnesy argues the fact that the *Gomez* and *Peretz* Courts "expressly refer[red]" to a magistrate judge's authority "in jurisdictional terms" underscores that a

14

magistrate judge's authority is a "jurisdictional issue" subject to de-novo—not plain-error—review. Aplt.'s Opening Br. at 11.

We reject Mr. Finnesy's argument. In a long line of cases issued after *Gomez* and *Peretz* (cases that Mr. Finnesy largely elides), this court has expounded on the meaning of "jurisdiction" as it pertains to a magistrate judge's authority. And what those cases have made plain is this: the term "jurisdiction," when employed by courts in reference to a magistrate judge's authority, is not used in the strict sense of subject-matter jurisdiction.

We crystallized this proposition the year after *Peretz* was decided, in *Clark v. Poulton*. There, in addressing the implications of a defendant's failure to object to a district-court referral to a magistrate judge, we examined "the jurisdiction and authority of a federal magistrate judge under section 636 [of the Federal Magistrates Act]." 963 F.2d 1361, 1363 (10th Cir. 1992). In particular, we looked to the *Gomez* Court's use of the term "jurisdiction," emphasizing that in that context, "the Court was *not* using the term 'jurisdiction' in the sense of non-waivable subject matter jurisdiction," but rather in the sense of "authority." *Id.* at 1366–67 (citing *Peretz*, 501 U.S. at 953 (Scalia, J., dissenting)). We also looked to *Peretz* and determined that, despite its use of the term "jurisdiction," its holding—i.e., that a magistrate judge has the authority to conduct jury selection with the parties' consent—*supported* the notion that the magistrate judge's

15

authority in that context did *not* implicate subject-matter jurisdiction, because

"litigants cannot confer jurisdiction by consent where none exists." *Id.* at 1367

(quoting *United States v. Judge*, 944 F.2d 523, 525 (9th Cir. 1991)). Accordingly,

we concluded in *Clark* that "a magistrate judge's lack of statutory authority is not

a jurisdictional defect, so any objection is waived if not raised."[3]  *Id.*  In other

words, any such objection is not preserved for appellate review.

*Clark*, moreover, was hardly a one-off.  Since issuing that decision, we

have repeatedly cited it and its progeny—in controlling precedent, as well as non-

precedential decisions—for the proposition that a magistrate judge's authority is

*not* jurisdictional.  *See, e.g.*, *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995) ("A

magistrate judge's lack of statutory authority is not a jurisdictional defect; thus,

objection to such authority is waived if not timely raised.").  Indeed, we analyzed

issues strikingly similar to those presented here in *United States v. Ciapponi* (a

case discussed at length below), which applied plain-error review where a

defendant had failed to object to a magistrate judge "taking" his guilty plea.[4]  77

---

[3]  In the interest of semantic precision, we note that *Clark* predated the Supreme Court's *United States v. Olano* decision, which established a clearer distinction between waiver and forfeiture.  507 U.S. 725, 733 (1993).

[4]  In attempting to escape the strictures of our precedent, Mr. Finnesy takes aim at *Ciapponi*, arguing that although it "indicated that plain error review applied," in actuality, it performed a merits analysis, "without any indication that it actually applied plain error review."  Aplt.'s Opening Br. at 11–12.  This argument, however, provides Mr. Finnesy no succor.  Irrespective of the precise

(continued...)

F.3d 1247, 1249–50 (10th Cir. 1996).  Thus, our precedent forecloses Mr.

Finnesy's argument.[5]

In sum, Mr. Finnesy failed to properly raise his challenge to the magistrate

judge's authority in district court—a challenge that we conclude is non-

jurisdictional and, consequently, is subject to our usual forfeiture rules.

Accordingly, we review for plain error.

**2**

A party seeking relief under the plain-error rubric bears the burden of

showing "(1) an error, (2) that is plain, which means clear or obvious under

current law, and (3) that affects substantial rights."  *United States v. McGehee*,

672 F.3d 860, 876 (10th Cir. 2012) (quoting *United States v. Cooper*, 654 F.3d

1104, 1117 (10th Cir. 2011)); *see also United States v. Gonzalez-Huerta*, 403

---

[4](...continued)
contours of its analysis, *Ciapponi* expressly invoked the plain-error framework, and this fact undercuts, rather than supports, Mr. Finnesy's argument for applying a different standard here.  Furthermore, rejection of an argument on its merits is entirely consistent with the plain-error standard, given that one of the standard's questions—indeed, its first one—is whether there was any error at all.  *See, e.g.*, *United States v. McGehee*, 672 F.3d 860, 876–77 (10th Cir. 2012).  Finally, for all of Mr. Finnesy's focus on *Ciapponi*, he fails to address the earlier, and arguably more robust, analysis of substantially similar issues in *Clark*, including its consideration of the meaning of the word "jurisdiction" as used in *Gomez* and *Peretz*, as well as its topline conclusion that "a magistrate judge's lack of statutory authority is not a jurisdictional defect."  963 F.2d at 1367.  Accordingly, Mr. Finnesy's efforts to chip away at our prior cases are unavailing.

[5]      Because our precedent ultimately answers the question at issue here, we find no reason to engage with the out-of-circuit cases that Mr. Finnesy cites.

F.3d 727, 736 (10th Cir. 2005) (en banc) (noting that a party seeking relief under plain-error review bears the burden of satisfying the elements of that standard of review). "As to the plain-error rubric's second inquiry, we have held that an error is clear or obvious if 'it is contrary to well-settled law.'" *United States v. Garcia*, 946 F.3d 1191, 1202 (10th Cir. 2020) (quoting *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000)). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003). "[A]s to the third inquiry, ordinarily when we say that 'the error affects substantial rights . . . [that] 'usually means that the error must have affected the outcome of the district court proceedings.'" *Garcia*, 946 F.3d at 1202 (alterations and omission in original) (quoting *Gonzalez-Huerta*, 403 F.3d at 732–33).

"If these factors are met, [this court] may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cordery*, 656 F.3d 1103, 1105 (10th Cir. 2011); *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) ("Under the plain error standard, 'even if a defendant demonstrates an error that is plain, we may only take corrective action if that error not only prejudices the defendant's substantial rights, but also seriously affects the fairness, integrity, or public

18

reputation of judicial proceedings.'" (quoting *United States v. Rivas-Macias*, 537 F.3d 1271, 1281 (10th Cir. 2008))).

**3**

We now turn to the merits of Mr. Finnesy's first claim on appeal, challenging his conviction. He argues that the powers granted to magistrate judges by federal statute and rule do not include the authority to accept guilty pleas and adjudicate a defendant guilty, and that the magistrate judge here thus lacked jurisdiction. Accordingly, he contends, he should be permitted to withdraw his guilty plea. We conclude that Mr. Finnesy has not cleared even the first hurdle of plain-error review: he has not demonstrated that the district court erred at all.

The bedrock authority delineating a magistrate judge's authority is the Federal Magistrates Act, and in particular, 28 U.S.C. § 636, entitled "Jurisdiction, powers, and temporary assignment." As its title signifies, this statute enumerates specific "powers" accorded to magistrate judges, such as the power to conduct certain trials and the power to enter sentences for certain misdemeanors. *See* 28 U.S.C. § 636(a)(3), (a)(5). In addition to these specified powers, the statute also provides that a district judge may, with some exceptions, "designate a magistrate judge to hear and determine any pretrial matter pending before the court," as well as "conduct hearings . . . and to submit to a judge of the court proposed findings

of fact and recommendations for the disposition." *Id.* § 636(b)(1)(A), (b)(1)(B). Of particular note, this statute further provides, under what is referred to as the "additional duties clause," that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." *Id.* § 636(b)(3). Finally, § 636(b)(4) provides that "[e]ach district court shall establish rules pursuant to which the magistrate judges shall discharge their duties." *Id.* § 636(b)(4). The District of Kansas, in turn, has enacted a rule stating that a magistrate judge may "take a felony guilty plea when the defendant consents and the district judge does not object." D. KAN. R. OF PRACTICE & PROCEDURE 72.1.1(i)(4).

Expounding on 28 U.S.C. § 636 and the scope of a magistrate judge's duties are several key cases, which we briefly highlight here. As touched on above, in *Gomez*, the Supreme Court held that the selection of a jury in a felony trial without a defendant's consent is not one of the "additional duties" that district courts may assign to magistrate judges under the Federal Magistrates Act. *See Gomez*, 490 U.S. at 858, 871–72. Then, in *Peretz*, the Court held that the Act's "additional duties" clause permits a magistrate judge to supervise jury selection in a felony trial *provided that* the parties consent, on the view that a defendant's consent is analytically significant in defining the scope and operation of that clause. *See* 501 U.S. at 924–25, 935–36. *Peretz* observed that *Gomez*'s

20

holding was narrow and was compelled by the constitutional issue it potentially

engendered as to "whether a defendant has a constitutional right to demand that

an Article III judge preside at every critical stage of a felony trial"; the principle

of constitutional avoidance, *Peretz* explained, thus led the *Gomez* Court to

demand clear evidence of Congress's intent to include among magistrate judge's

"additional duties" one that "raised a substantial constitutional question" (*viz.*,

supervision of jury selection in felony trials). *Id.* at 928–30.

Finally, there is *Ciapponi*, which considered *Peretz* in some depth.

*Ciapponi* is fatal to Mr. Finnesy's argument. In *Ciapponi*, a district judge

designated a magistrate judge to "accept" the defendant's guilty plea. 77 F.3d at

1249. At the defendant's plea hearing, the magistrate judge informed the

defendant of his right to "appear before a district judge to enter his plea," the

defendant then executed a Consent to Proceed form "waiving his right to enter his

plea before a district judge and consenting to proceed before the magistrate

judge," and ultimately, the magistrate judge conducted the proceedings "and

accepted the defendant's plea of guilty." *Id.* Addressing defendant's challenge to

his conviction, *Ciapponi* framed the issue on appeal as "whether the magistrate

judge lacked jurisdiction to accept [the] defendant's guilty plea." *Id.*

Applying plain-error review, the *Ciapponi* court analyzed *Peretz* and the

"additional duties" clause, asking whether "the task at issue" bore "some

21

reasonable relation to specified duties which may be assigned to magistrate judges under the [Federal] Magistrates Act," and, even if so, whether such a referral to a magistrate judge "impinge[d] a criminal defendant's constitutional right under Article III to have a district court judge preside at all critical stages of a felony trial." *Id.* at 1250. *Ciapponi* observed that in *Peretz*, "the Court stressed that the defendant's consent was critical to both the statutory and constitutional inquiries." *Id.* It further noted that, in construing the Federal Magistrates Act in this context—where "the principle of constitutional avoidance" ordinarily is involved—"when the defendant consents to proceed before a magistrate judge, the constitutional analysis changes significantly because no constitutional right is implicated if the defendant does not object to the absence of an Article III judge." *Id.* (citing *Peretz*, 501 U.S. at 936); *see also id.* at 1251 (stating that the defendant's "failure to object or otherwise request review by the district court leaves him in no position to now complain that the magistrate judge's taking of his guilty plea . . . violated his constitutional rights"). Thus, "[c]onsistent with *Peretz*," *Ciapponi* held that "with a defendant's express consent, the broad residuary 'additional duties' clause . . . authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does not violate the defendant's constitutional rights." *Id.* at 1251.

22

*Ciapponi* concluded, "neither the Magistrates Act nor Article III requires that a referral be conditioned on subsequent review by the district judge, so long as a defendant's right to demand an Article III judge is preserved." *Id.* at 1251–52. In so concluding, the court noted that under the Federal Rules of Criminal Procedure, defendants have the right to demand an Article III judge, as a matter of right, by motion to withdraw their guilty plea before sentencing, and therefore, their right to demand an Article III judge is preserved. *Id.* at 1252; *see also* FED. R. CRIM. P. 11(d)(2) (providing that defendant may withdraw a guilty plea between the court's acceptance of the plea and the imposition of sentence if "the defendant can show a fair and just reason for requesting the withdrawal").

The principles expressed in *Ciapponi* remain good law in this circuit. Time and again, this court has continued to hold that a magistrate judge has the authority to accept a defendant's guilty plea, provided that the defendant has given consent to that procedure. *See, e.g.*, *Garcia*, 936 F.3d at 1138 ("Based on our precedent, it is clear that in the Tenth Circuit, federal magistrate judges have the authority to accept felony guilty pleas . . . ."); *United States v. Salas-Garcia*, 698 F.3d 1242, 1253 (10th Cir. 2012) ("Magistrate judges have the authority to conduct plea hearings and accept guilty pleas."); *United States v. Montano*, 472 F.3d 1202, 1204 (10th Cir. 2007) ("A magistrate judge has jurisdiction to conduct a plea hearing and subsequently accept a defendant's plea where the defendant

23

consents."). In short, *Ciapponi* instructs that a magistrate judge may accept a felony guilty plea if the defendant consents, and roundly forecloses Mr. Finnesy's argument to the contrary.[6] In the face of this controlling authority, Mr. Finnesy

---

[6] Mr. Finnesy drills down on *Ciapponi*'s language and urges that we take note of certain of the terms it employs. Most relevantly, he hones in on the term "conduct," emphasizing that the opinion's holding is that a magistrate judge is authorized to "*conduct*" a felony plea colloquy. 77 F.3d at 1251 (emphasis added); *see also id.* at 1249, 1251 (discussing the issue in terms of "*taking*" a plea (emphasis added)). But *conducting* a change-of-plea colloquy on the one hand—which, by his reading, is all that *Ciapponi* countenances—and "*accept[ing]* a guilty plea and *adjudicat[ing]* a defendant guilty" on the other, are markedly and meaningfully distinct, he argues. Aplt.'s Opening Br. at 16–17 (emphases added). A close reading of *Ciapponi*, however, undercuts Mr. Finnesy's argument on this score. First and foremost, in discussing the factual background of the case, *Ciapponi* made no mention of the magistrate judge issuing a recommendation to a district judge, nor did it characterize the magistrate judge's participation as limited to "conducting" a plea colloquy. 77 F.3d at 1249. Instead, it spoke of the magistrate judge "accept[ing] defendant's plea of guilty" and did *not* discuss any further action by the district court (aside from imposing a sentence). *Id.*

We also note that this court's subsequent cases citing *Ciapponi*, as well as at least one out-of-circuit case, frame *Ciapponi*'s holding in terms of a magistrate judge's ability both to *conduct* a plea hearing and to *accept* a guilty plea. *Salas-Garcia*, 698 F.3d at 1253; *Montano*, 472 F.3d at 1204; *see United States v. Harden*, 758 F.3d 886, 891 (7th Cir. 2014) (observing "widespread agreement" that a magistrate judge may conduct a Rule 11 colloquy for purposes of making a report and recommendation, and that the Fourth, Tenth (in *Ciapponi*), and Eleventh Circuits further "authorize magistrate judges to accept felony guilty pleas with the parties' consent"); *see also United States v. Torres*, 258 F.3d 791, 795 (8th Cir. 2001) (observing that the Second, Fifth, and Tenth circuits have ruled that a magistrate judge may preside over an allocution and plea in a felony case where the defendant consents, and that the Tenth Circuit (in *Ciapponi*) has further held that the district court "need not review the proceedings unless the parties so demand").

cannot satisfy even the first prong of the plain-error framework: he cannot establish error.

Yet straining to blunt *Ciapponi*'s controlling force, Mr. Finnesy contends that certain post-*Ciapponi* developments have cast *Ciapponi* into doubt. Aplt.'s Opening Br. at 18. Specifically, he focuses on the 2005 enactment of Federal Rule of Criminal Procedure 59. This rule describes how magistrate judges should deal with referred matters in criminal cases, dividing them into "nondispositive" matters and "dispositive" matters. *See* FED. R. CRIM. P. 59. Rule 59 defines "nondispositive" matters as "any matter that does not dispose of a charge or defense." As to such matters, the magistrate judge conducts proceedings and enters an order, and any party may object to the order and have the district court set aside rulings that are "contrary to law or clearly erroneous." *Id.* at R. 59(a). "Dispositive" matters, meanwhile, include "a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." *Id.* at R. 59(b). Rule 59 contemplates that magistrate judges handling such "dispositive" matters conduct proceedings and make a "recommendation" for the district judge's acceptance or rejection, and that the parties then have the right to object to the recommendation under a de-novo standard of review by the district court. *Id.* Against this backdrop, Mr. Finnesy contends that "[t]o the extent *Ciapponi* can be read to deny relief here,

25

the addition of Rule 59 undermines that reading" by requiring a magistrate judge to issue a *recommendation* on the "dispositive" matter of a defendant's guilty plea.  Aplt.'s Opening Br. at 18; *see United States v. Jones*, 818 F.3d 1091, 1100 (10th Cir. 2016) (stating that a panel may "depart from precedent without en banc review when an amendment to an applicable rule or statute creates a new standard").

Our recent decision in *United States v. Garcia*—which squarely addressed the effect (or more accurately, lack thereof) of Rule 59 on *Ciapponi*'s holding—firmly closes the door on Mr. Finnesy's argument.  There, we determined that Rule 59 had no bearing on our decision in *Ciapponi*, because "nothing in the language of Rule 59 indicates that magistrate judges cannot accept felony guilty pleas when the parties consent," and "Rule 59 places the discretion of such authority in the hands of the courts absent explicit instruction otherwise."

*Garcia*, 936 F.3d at 1139.[7]  Therefore, Mr. Finnesy's arguments concerning post-*Ciapponi* developments do not give us pause.

In sum, Mr. Finnesy has failed to establish that the district court erred in permitting the magistrate judge to accept his felony guilty plea.  Accordingly, absent a showing of error, much less plain error, we reject Mr. Finnesy's first challenge and, consequently, uphold his conviction.  We turn to Mr. Finnesy's two claims of error as to his sentence.

**B**

Turning to Mr. Finnesy's second claim of error (and the first of his two challenges to his sentence), he contends that the district court improperly failed to apply U.S.S.G. § 5G1.3(b) in his case.  *See* Aplt.'s Opening Br. at 9, 19–23.  Specifically, he argues that, had this provision been applied, it would have required the district court (absent a variance) to impose his federal sentence to run concurrently with, rather than consecutively to, his undischarged state

---

[7]     Indeed, there is some suggestion in Rule 59's drafting history that the Advisory Committee intended to preserve the approach set forth in *Ciapponi*.  *See* Magistrate Judges Committee Agenda for Dec. 2002, at 9–11 (advising against adopting version of Rule 59 that would specifically include felony guilty pleas among "dispositive matters," as doing so would "prohibit the approach taken in New Mexico and approved by the Tenth Circuit [in *Ciapponi*]," and stating that it may be "more appropriate" for courts to be provided with the "flexibility" to, *inter alia*, "follow the practice upheld by the Tenth Circuit of having magistrate judges accept felony guilty pleas with the defendant's consent, subject only to the defendant's right to withdraw the plea").

27

sentence.  *Id.* at 23.  In other words, Mr. Finnesy contends that his consecutive sentence is the product of the district court's improper application of the Guidelines.  As such, Mr. Finnesy challenges the procedural reasonableness of the district court's sentence.  *See, e.g.*, *United States v. Gordon*, 710 F.3d 1124, 1160 (10th Cir. 2013); *United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011).

Typically, "'we review legal questions regarding the application of the Sentencing Guidelines de novo,' and 'a district court's factual findings are reviewed only for clear error, giving due deference to the district court's application of the Guidelines to the facts.'"  *United States v. Iley*, 914 F.3d 1274, 1278–79 (10th Cir. 2019) (quoting *United States v. Pentrack*, 428 F.3d 986, 989 (10th Cir. 2005)).  Nonetheless, "[a]s a general rule, when a defendant fails to preserve an objection to the procedural reasonableness of his sentence, we review only for plain error."  *United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008).

As we discuss below, we conclude that Mr. Finnesy has forfeited his § 5G1.3(b) challenge to the procedural reasonableness of his sentence, and, therefore, our review is only for plain error.  As to the merits of his claim, we hold that Mr. Finnesy has failed to satisfy the second element of the plain-error test—that is, he has failed to demonstrate that the district court clearly or obviously erred in failing to apply § 5G1.3(b).

28

# 1

We are confronted with a threshold question of whether Mr. Finnesy's claim of error was forfeited in district court, thereby triggering plain-error review. Although he did not specifically invoke § 5G1.3(b) in district court, Mr. Finnesy contends that his general request for a concurrent sentence was sufficient to preserve his challenge for appeal. Aplt.'s Opening Br. at 19. The government disagrees, arguing that Mr. Finnesy has forfeited his challenge and that it is thus subject to plain-error review. *See* Aplee.'s Resp. Br. at 10–11.

We agree with the government. Not only did Mr. Finnesy fail to specify in the first instance that he objected to the district court's ruling on § 5G1.3(b) grounds, but to the extent that Mr. Finnesy's counsel directed the district court toward an alleged error, it was *not* the error that he presents on appeal. That is to say, Mr. Finnesy's counsel effectively diverted the district court's attention from the alleged error he pursues on appeal. As a consequence, he forfeited this argument. *See, e.g.*, *United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir. 2018) (noting that a party forfeits an objection by "stating a different ground at trial than on appeal").

The facts bear out Mr. Finnesy's failure to adequately alert the district court to the alleged sentencing error under § 5G1.3(b). As discussed above, in addressing its tentative federal sentence on the escape-from-custody offense, the

district court informed the parties that this sentence would run consecutive to his state sentence. The court then solicited objections. Mr. Finnesy's counsel advised the court that "the sentence at the statutory maximum and consecutive to what he's already serving is substantively unreasonable" and that "procedurally . . . the sentence is also unreasonable." R., Vol. III, at 56. The district court then pressed defense counsel to specify the "nature of" his procedural objections. *Id.* Mr. Finnesy's counsel responded that his objections concerned "the testimony that was brought out in the hearing today." *Id.* The district court informed counsel that it saw no "procedural irregularity" in the conduct of the hearing, and defense counsel stated that he would seek to argue on appeal "those issues that [he] raised in [his] objections that went against [him]." *Id.* The district court overruled his purported procedural objection, stating that "the fact that [Mr. Finnesy's counsel] lost an objection" was not a "procedural irregularity." *Id.* That was the extent of the colloquy with the district court: at no point did Mr. Finnesy's counsel specify that he was objecting on the ground that the district court had not applied § 5G1.3(b), nor did he even assert (more generally) that a concurrent sentence was required under the Guidelines based on the factual circumstances here. Accordingly, Mr. Finnesy (through counsel) forfeited his § 5G1.3(b) argument.

In arguing to the contrary, Mr. Finnesy's reliance on *United States v. Tisdale* is unavailing. There, while presiding over the defendant's sentencing

30

hearing, the district court described a tentative sentence and then "asked whether there were any objections to the proposed sentence." 248 F.3d 964, 976 (10th Cir. 2001). Mr. Tisdale's counsel responded, "[t]he only request, Your Honor, would be that the [c]ourt consider the lower end of the [G]uidelines. And also, he is serving a State sentence, but that the [c]ourt make the sentence here concurrent with the State sentence." *Id.* The district court heard "brief arguments" (not further described in *Tisdale*) on "this issue" and then ordered a consecutive sentence. *Id.* On appeal, we opined that Mr. Tisdale's objection was not "the model of specificity" and that it would have been "preferable" for Mr. Tisdale to have referenced § 5G1.3. *Id.* at 975–76. We determined, however, that his argument "sufficiently raised the issue of the imposition of a consecutive versus a concurrent sentence" and "alert[ed] the district court to the issue at hand," including a contention that the district court erroneously applied § 5G1.3. *Id.* at 976. Thus, we reviewed Mr. Tisdale's contentions de novo. *Id.*

Mr. Finnesy argues that his case is squarely governed by *Tisdale*: he reasons that, although he did not invoke § 5G1.3 in district court, he "nonetheless requested a concurrent sentence," like Mr. Tisdale's counsel. Aplt.'s Reply Br. at 6. But we see a significant difference between the facts of Mr. Finnesy's case and the facts in *Tisdale*. In *Tisdale*, the defendant's arguable failing was simply that he asserted his objection to the sentencing error that he later presented on

31

appeal in a somewhat unspecific manner. *See Tisdale*, 248 F.3d at 976. And we concluded unremarkably that, though it was not "the model of specificity," his objection sufficiently "alert[ed] the district court to the issue at hand." *Id.* However, in sharp contrast here, insofar as Mr. Finnesy alerted the district court to *an* issue, he did not alert the court *"to the issue at hand*," *id.* (emphasis added); that is, it was *not* the issue that he now presents on appeal. In other words, Mr. Finnesy's objection before the district court was not just somewhat vague; instead, it effectively shifted the district court's attention *away from* the supposed concurrent-consecutive procedural error under § 5G1.3(b) he now alleges on appeal. Recall that when asked to specify the "nature of" his procedural objections, R., Vol. III, at 56, Mr. Finnesy told the court that his objections pertained to "the testimony that was brought out in the hearing today," *id.* In effect, Mr. Finnesy led the court to believe that his objections related to one or more "procedural irregularit[ies]" in the conduct of the hearing. *Id.* And, despite ample opportunity in the context of the court's questioning to clarify that he actually found *procedural* fault in the court's application of § 5G1.3 and its resulting decision to run his sentence consecutively, Mr. Finnesy failed to do so. Instead, he simply complained that the court's proposed consecutive sentence would be "*substantively* unreasonable." *Id.* (emphasis added); *see United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008) ("Our appellate review for

32

reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence."). Accordingly, we believe Mr. Finnesy's reliance on *Tisdale* is misplaced.

In short, Mr. Finnesy's procedural objection here did not adequately alert the district court that its proposed decision to run his federal sentence consecutively to his state sentence might contravene U.S.S.G. § 5G1.3(b). Accordingly, we deem this claim of error to be forfeited and apply plain-error review. *See United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997) (reviewing for plain error a legal question involving application of the Guidelines where counsel failed to "lodge a specific objection based upon either of the issues now presented for the first time on appeal"); *see also Holguin-Hernandez v. United States*, --- U.S. ----, 140 S. Ct. 762, 767 (2020) (Alito, J., concurring) ("The plain-error rule serves many interests, judicial efficiency and finality being chief among them. Requiring a party to bring an error to the attention of the court enables the court to correct itself, obviating the need for an appeal. At the very least, the court can explain its reasoning and thus assist the appellate process. A court cannot address particular arguments or facts not brought to its attention."

(citation omitted));[8] *United States v. Lynn*, 592 F.3d 572, 579 n.4 (4th Cir. 2010)

("Of course, lodging one specific claim of procedural sentencing error before the

district court, *e.g.*, relying on certain [18 U.S.C.] § 3553 factors, does not

---

[8] We note that in *Holguin-Hernandez*, the Supreme Court recently clarified that the standard of specificity that at least one circuit—the Fifth—demanded litigants adhere to when lodging certain objections to the *substantive* reasonableness of sentences, i.e., the length of sentences, was too stringent to be consistent with the Federal Rules of Criminal Procedure. 140 S. Ct. at 767 ("We hold only that the defendant here properly preserved the claim that his 12-month sentence was unreasonably long by advocating for a shorter sentence and thereby arguing, in effect, that this shorter sentence would have proved 'sufficient,' while a sentence of 12 months or longer would be 'greater than necessary' to 'comply with' the statutory purposes of punishment." (quoting 18 U.S.C. § 3553(a))); *see id.* at 766 ("[It] is certainly true in cases such as this one, where a criminal defendant advocates for a sentence shorter than the one ultimately imposed. Judges, having in mind their 'overarching duty' under § 3553(a), would ordinarily understand that a defendant in that circumstance was making the argument (to put it in statutory terms) that the shorter sentence would be 'sufficient' and a longer sentence 'greater than necessary' to achieve the purposes of sentencing. Nothing more is needed to preserve the claim that a longer sentence is unreasonable." (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011))); *see also id.* at 765 (contrasting our preservation approach in *United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th 2006), with the Fifth Circuit's). However, the Court stressed that it was not speaking to the standard of specificity properly demanded of litigants filing objections pertaining to the *procedural* reasonableness of sentences—*viz.*, "what is sufficient to preserve a claim that a trial court used improper *procedures* in arriving at its chosen sentence" was a subject the Court underscored it "shall not consider." *Id.* at 767; *see id.* (Alito, J., concurring) ("writ[ing] to emphasize what we are not deciding," including the preservation question concerning objections to the *procedural* reasonableness of sentences). Mr. Finnesy's sentencing challenges—both this one related to § 5G1.3(b) and his subsequent acceptance-of-responsibility challenge resolved *infra*—concern the *procedural* reasonableness of his sentence. Therefore, *Holguin-Hernandez*'s holding has no direct bearing on the preservation standards that we articulate herein.

34

preserve for appeal a different claim of procedural sentencing error, *e.g.*, relying on different § 3553 factors.").

**2**

We now turn to the merits of Mr. Finnesy's second claim of error. Recall that in order to satisfy the rigorous plain-error standard, a party ordinarily must show "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *McGehee*, 672 F.3d at 876 (quoting *Cooper*, 654 F.3d at 1117). If that party makes this showing, we may exercise our discretion to correct the error if (4) "it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Cooper*, 654 F.3d at 1117).

Mr. Finnesy contends that, in ordering his federal escape-from-custody sentence to run consecutively to his undischarged state sentence, the district court plainly erred because it should have applied § 5G1.3(b) of the Guidelines, which would have directed the court to run those sentences concurrently. Section 5G1.3, entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment" sets out the framework for the imposition of concurrent and consecutive sentences, and provides as follows :

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the

sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense *that is relevant conduct* to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

> (2) the sentence for the instant offense shall be imposed to *run concurrently to* the remainder of the undischarged term of imprisonment. . . .

(d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3 (emphases added). The Application Notes to § 5G1.3 clarify the scope of subsection (b). Specifically, in pertinent part, Note 2 states the following:

> 2. Application of Subsection (b). –

> > (A) In General. – Subsection (b) applies in cases in which all of the prior offense is relevant conduct to the instant offense under the provisions of subsection (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct). Cases in

36

which only part of the prior offense is relevant conduct to the instant offense are covered under subsection (d).

(B) Inapplicability of Subsection (b). – Subsection (b) does not apply in cases in which the prior offense was not relevant conduct to the instant offense under § 1B1.3(a)(1), (a)(2), or (a)(3) . . . .

*Id.* § 5G1.3 cmt. n.2.

Mr. Finnesy contends that the district court committed plain procedural error because it failed to apply § 5G1.3(b); if it had done so, he says, it would have run his federal sentence concurrently with his undischarged state sentence (absent a variance). *See* Aplt.'s Opening Br. at 21–23; Aplt.'s Reply Br. at 13; *see also United States v. Kieffer*, 681 F.3d 1143, 1167 (10th Cir. 2012) (noting that, where the offense underlying the undischarged sentence was the kind of relevant conduct that § 5G1.3(b) contemplates, the Guidelines "required the court to account for U.S.S.G. § 5G1.3(b)(2) and, absent a variance based on the § 3553(a) factors, impose a concurrent term of imprisonment on Defendant as part of any sentence within the applicable guideline range" (emphasis omitted)).

By Mr. Finnesy's logic, because the offenses underlying his state sentence—possession of a controlled substance and possession of a firearm by a convicted felon—were committed while he was in escape status, the state offenses are relevant conduct to his federal escape-from-custody offense upon which the district court sentenced him, and thus the court should have applied § 5G1.3(b)

and run his escape-from-custody sentence concurrently with his undischarged state sentence. *See* Aplt.'s Opening Br. at 22. In particular, Mr. Finnesy reasons that his underlying state offenses are relevant conduct of the kind that § 5G1.3(b) covers because escape is a continuing offense, *see, e.g.*, *United States v. Bailey*, 444 U.S. 394, 413 (1980); *United States v. Brown*, 314 F.3d 1216, 1224 (10th Cir. 2003), and he committed his state offenses "during the commission of the [escape] offense" pursuant to Guidelines § 1B1.3(a)(1)(B).[9]

---

[9] In full, subsection (a)(1)(B) provides that:

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were–

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

that occurred *during the commission of the offense* of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . .

U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added). As noted *supra*, Mr. Finnesy was not alone when he was apprehended in escape status. Though he does not say so, presumably this is why Mr. Finnesy invokes the relevant-conduct provision related to "jointly undertaken activity."

38

The government contests Mr. Finnesy's assertion of plain error. Among other things, it disputes Mr. Finnesy's contention that the prior offenses underlying his undischarged state sentence were relevant conduct at all, and, even if they were, that they were the kind of relevant conduct that § 5G1.3(b) contemplates. In particular, the government asserts that the PSR did not consider the offenses underlying Mr. Finnesy's undischarged state sentence to be relevant conduct. In this regard, it notes that the PSR discussed the state offenses in recounting Mr. Finnesy's criminal history and assigned criminal history points to the offenses, *see* R., Vol. II, ¶¶ 45–48, at 22–23, which it would not have done if those offenses constituted relevant conduct, *see, e.g.*, *United States v. Torres*, 182 F.3d 1156, 1159 (10th Cir. 1999) (noting that "a prior sentence counts as criminal history if it does *not* involve relevant conduct under § 1B1.3"); *accord United States v. Vargas-Garcia*, 434 F.3d 345, 348 (5th Cir. 2005) (noting that "unlike a prior offense resulting in a prior sentence, relevant conduct that is part of the instant offense does not create additional criminal history points").

The government observes, moreover, that "the district court did not appear to treat the state conviction as 'relevant conduct,'" Aplee.'s Resp. Br. at 13, in that it expressly commented that the state offenses underlying that conviction "are not really related to the offense that he's being sentenced for here," R., Vol. III, at 55. Finally, the government argues that "[e]ven if the state conviction had been

39

considered as 'relevant conduct,' it is not clear that, in this case, the possession of methamphetamine and criminal possession of a firearm conviction should fall within (a)(1) rather than (a)(4) of" § 1B1.3.[10]  Aplee's Resp. Br. at 13.  The upshot, of course, is that if the state offenses do in fact fall under subsection (a)(4), then § 5G1.3(b) would not apply because subsection (a)(4) is not one of the relevant-conduct provisions identified therein.  And, in rebutting Mr. Finnesy's argument that escape is a "continuing offense," the government asserts that "none of those cases [that Mr. Finnesy relies on] addressed whether a new crime committed during the escape necessarily qualified as relevant conduct under (a)(1), (a)(2), (a)(3) or (a)(4) of USSG 1B1.3." *Id.* at 14.  In this same vein, the government suggests that not every crime committed when a defendant is in escape status will necessarily qualify as relevant conduct under the specific provisions of § 1B1.3 that § 5G1.3(b) enumerates.  Generally speaking, we agree with the government.[11]

---

[10]    Subsection (a)(4) specifies that—amongst the other variables that should be taken into account in determining relevant conduct—is "any other information specified in the applicable guideline."  U.S.S.G. § 1B1.3(a)(4).  The Guidelines commentary explains, "[s]ubsection (a)(4) requires consideration of any other information specified in the applicable guideline.  For example, § 2A1.4 (Involuntary Manslaughter) specifies consideration of the defendant's state of mind; § 2K1.4 (Arson; Property Damage By Use of Explosives) specifies consideration of the risk of harm created." *Id.* § 1B1.3 cmt. (backg'd).

[11]    Because we do so for the reasons explicated here, we have no occasion to address the government's other arguments opposing Mr. Finnesy's

(continued...)

40

We conclude that Mr. Finnesy has not established that the district court clearly or obviously erred under the circumstances of this case in not applying § 5G1.3(b) and, consequently, ordering his sentence for the federal escape-from-custody offense to run concurrently with his undischarged state sentence. More specifically, neither the record nor well-settled law supports Mr. Finnesy contention that the district court plainly erred in not applying § 5G1.3(b).

We turn first to examining the merits of his contention in the context of the record. It is undisputed that (if subdivision (a) does not apply) a district court is only obliged to apply § 5G1.3(b) where the offenses underlying the undischarged sentence are relevant conduct as to the offense of conviction (*viz.*, the subject of the sentencing) and are, more specifically, relevant conduct within the meaning of subsection (a)(1), (a)(2), or (a)(3) of § 1B1.3. Accordingly, if the record before the sentencing court failed to show that the offenses underlying the undischarged sentence were relevant conduct and, in particular, were relevant conduct under subsection (a)(1), (a)(2), or (a)(3), then the sentencing court would not have erred in failing to apply § 5G1.3(b). What this would then logically mean is that, viewed through the prism of plain-error review, unless the record clearly or obviously revealed that the offenses underlying the undischarged sentence were

---

[11](...continued)
second claim of error.

41

relevant conduct and, more specifically, were relevant conduct under subsection (a)(1), (a)(2), or (a)(3), then the sentencing court could not have clearly or obviously erred in failing to apply § 5G1.3(b)—*viz.*, it could not have plainly erred in failing to apply this provision.

We conclude that on the record before the district court, it hardly would have been clear or obvious that the state offenses underlying Mr. Finnesy's undischarged state sentence were relevant conduct, or that, even if they were, they were relevant conduct within the meaning of subsection (a)(1), (a)(2), or (a)(3) of § 1B1.3. Accordingly, Mr. Finnesy cannot demonstrate that the district court clearly or obviously erred in failing to apply § 5G1.3(b). *Cf. United States v. Hamilton*, 587 F.3d 1199, 1216 n.9 (10th Cir. 2011) ("[E]ven if we applied plain error review, the fact-dependent nature of Mr. Hamilton's claims would prevent us from reaching a conclusion that any error by the district court satisfied the plain error standard" because, by failing to present his claims to the district court, "Mr. Hamilton effectively prevented the court from making factual findings that would be germane to the disposition of [his] claims" and thus, "any alleged errors could not be deemed to be obvious and clear."); *cf. also United States v. Ceron*, 775 F.3d 222, 226 (5th Cir. 2014) (per curiam) (collecting cases for proposition that plain-error review takes place "based on the record before the district court").

42

The PSR left virtually no room for doubt that it did *not* consider Mr. Finnesy's state offenses to be relevant conduct. And, importantly, Mr. Finnesy raised no objections to the contents of the PSR, *see* R., Vol. II, ¶ 139, at 39 ("Counsel, for the defendant, has no objections to the presentence investigation report."), meaning that the district court would not have been alerted to any concerns regarding the PSR's assessment of the scope of relevant conduct. Specifically, as Mr. Finnesy himself acknowledges, *see* Aplt.'s Opening Br. at 23, the PSR never expressly referred to the offenses giving rise to his undischarged state sentence as relevant conduct, nor did it mention those offenses in the section of the PSR labeled, "The Offense Conduct," R., Vol. II, ¶¶ 12–16, at 7 (bold font and underlining omitted). Instead, as the government indicates, the PSR only discussed those offenses as part of Mr. Finnesy's criminal history and assigned criminal history points to them—an action that would have been at odds with the view that the offenses were relevant conduct. *See Torres*, 182 F.3d at 1159. Indeed, even Mr. Finnesy acknowledges that "a sentence previously imposed for conduct that is relevant conduct to the instant offense should not receive criminal history points." Aplt.'s Reply Br. at 9.

To be sure, Mr. Finnesy contends that the PSR would not have assigned Mr. Finnesy a base offense level of thirteen under U.S.S.G. § 2P1.1(a)(1), unless it considered his offenses underlying his state sentence to be relevant conduct. In

43

this regard, he notes that ordinarily § 2P1.1 provides for a four-level reduction from the base offense level for defendants who escape from a "non-secure" facility, like Mr. Finnesy did, *see* U.S.S.G. § 2P1.1(b)(3) (providing under certain circumstances for a four-level reduction in the base offense level "[i]f the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility"), but he did not receive that reduction. He reasons that this is because the PSR took into account his state offenses as relevant conduct, and that under the plain terms of § 2P1.1(b)(3), this made him ineligible for the reduction. *See id.* ("*Provided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more."). However, even if we assume that the PSR's decision not to give Mr. Finnesy the benefit of the offense-level reduction for escapes from a non-secure facility means that the PSR tacitly determined that his state offenses were relevant conduct, that would provide only meager aid to Mr. Finnesy's cause. It would not change the fact that the PSR never—not in the § 2P1.1 context or otherwise—expressly referred to Mr. Finnesy's state offenses as relevant conduct, such that it would have been clear or obvious to the district court that this was a possibility. Moreover, even if the PSR tacitly determined that Mr. Finnesy's state offenses were relevant conduct for purposes of § 2P1.1,

44

that would not have necessarily shed any light on whether those offenses were relevant conduct within the meaning of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 so as to trigger the application of § 5G1.3(b). And this assumed tacit determination certainly would not have made it clear or obvious to the district court that Mr. Finnesy's state offenses fell within one of the three enumerated relevant-conduct provisions.

Thus, based on the PSR—as to which Mr. Finnesy lodged no objection—it would not have been clear or obvious to the district court that Mr. Finnesy's state offenses underlying his undischarged state conviction were relevant conduct, let alone relevant conduct under subsection (a)(1), (a)(2), or (a)(3) so as to trigger the application of § 5G1.3(b). And there is nothing else in the record to the contrary. Indeed, it should not be surprising based on the record—as Mr. Finnesy acknowledges, *see* Aplt.'s Opening Br. at 23—that the district court made no findings that his state-law offenses were relevant conduct. To the contrary, as the government noted, the district court expressly observed that the state offenses underlying Mr. Finnesy's undischarged sentence "are not really related to the offense that he's being sentenced for here." R., Vol. III, at 55.

In sum, the record does not support Mr. Finnesy's contention that the district court plainly erred in not applying § 5G1.3(b). Nor does the well-settled law, as we now turn to discuss.

45

Mr. Finnesy suggests that—notwithstanding the record's virtual silence concerning the matter—the circumstances of his state-law offenses should have made it clear or obvious to the district court, as a matter of law, that those offenses were relevant conduct of the kind that § 5G1.3(b) contemplates. Accordingly, as Mr. Finnesy sees it, the district court committed "reversible error" when it "failed to account for § 5G1.3(b)" in imposing a consecutive sentence. Aplt.'s Opening Br. at 23. In this regard, Mr. Finnesy reasons that because his escape-from-custody offense is undisputedly a continuing offense, it necessarily follows that his state-law offenses—which were committed while he was in escape status—took place "during the commission of the [escape] offense" within the meaning of U.S.S.G. § 1B1.3(a)(1)(B), and that, as such, those offenses fall within the scope of § 5G1.3(b). *See* Aplt.'s Reply Br. at 11 (noting that "the conduct underlying the state sentence [of Mr. Finnesy] fits easily within § 1B1.3's definition of relevant conduct," specifically because that conduct occurred "during the commission of the offense").

However, it is telling—and especially problematic for Mr. Finnesy on plain-error review—that, in his reply brief, Mr. Finnesy does not challenge the government's assertion that "none of those cases [that Mr. Finnesy relies on] addressed whether a new crime committed during the escape *necessarily* qualified as relevant conduct" under the § 1B1.3 subsections specified in § 5B1.3(b) (i.e.,

46

(a)(1)–(a)(3)).  Aplee.'s Resp. Br. at 14 (emphasis added); *see United States v. A.S.*, 939 F.3d 1063, 1076 (10th Cir. 2019) (noting that "we are free to conclude that [the defendant] waived, at the very least, non-obvious arguments *against*" a ground for affirmance that "the government highlighted . . . in its responsive briefing"); *accord Eaton v. Pacheco*, 831 F.3d 1009, 1031 (10th Cir. 2019).  In any event, our examination of Mr. Finnesy's cases confirms the truth of the government's assertion.  Those cases addressed whether escape was a continuing offense in contexts that are not directly apposite to this one.  *See Bailey*, 444 U.S. at 412–13 (establishing that escape was a continuing offense, in the context of determining whether defendant-escapee was entitled to an instruction on duress or necessity as a defense to the crime charged); *Brown*, 314 F.3d at 1224 (assessing whether escape from a county jail was a continuing offense for purposes of evaluating district court's imposition of a Guidelines enhancement for possessing a firearm in connection with another felony); *see also United States v. Jones*, 332 F.3d 1294, 1303 n.13 (10th Cir. 2003) (cited by Mr. Finnesy solely for the proposition that, as to Guidelines § 2P1.1, "Congress has recognized that, in some instances, a prior criminal conviction is relevant in determining the 'seriousness' of the offense'").

Therefore, Mr. Finnesy has not satisfied his burden under the second prong of plain-error review because in addition to the absence of record support for his

position, he has failed to identify well-settled law—i.e., ordinarily, understood to be law from the Supreme Court or our court—indicating that the district court clearly or obviously erred in failing to recognize that Mr. Finnesy's offenses underlying his undischarged state sentence were relevant conduct of the kind that § 5G1.3(b) contemplates because they took place during the course of Mr. Finnesy's continuing offense of escape. *See, e.g.*, *United States v. Courtney*, 816 F.3d 681, 683 (10th Cir. 2016) ("[I]n all cases, the 'burden of establishing plain error lies with the appellant' . . . ." (quoting *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1151 (10th Cir. 2012))); *United States v. Knight*, 659 F.3d 1285, 1293 (10th Cir. 2011) ("Although Knight points to several cases in which courts distinguish between actual and constructive possession, he does not identify any case—much less a Tenth Circuit or Supreme Court decision—holding that failure to provide a constructive possession instruction is erroneous. Absent such authority, any claim of error was not plain.").[12]

In any event, our independent examination of the controlling caselaw revealed no decisions directly addressing the relevant-conduct question before us, making it all the more pellucid that the district court's purported error was

---

[12] Mr. Finnesy has asked us not to "consider this [second] prong of plain error review" because the government does not "make a separate argument" concerning it. Aplt.'s Reply Br. at 13. However, we reject this request because as noted in text *supra*—as the proponent of plain-error review—Mr. Finnesy bears the burden to establish each element of the standard.

anything but "clear or obvious" under the plain-error framework. *See Garcia*, 946 F.3d at 1210 (where defendant "ha[d] cited no controlling precedent from the Supreme Court or the Tenth Circuit that establishe[d] [his asserted challenge on appeal]," and "we are not aware of any[,] . . .[t]his effectively sounds the death knell for his . . . challenge on plain-error review").

We recognize that Mr. Finnesy's argument under this second prong of plain-error review also relies in part on "the plain text of § 5G1.3(b) and § 1B1.3." Aplt.'s Reply Br. at 13. And it is true that the plain terms of a statute or regulation in certain instances can provide the basis for a plain-error finding. *See United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (in holding that the district court clearly or obviously erred in awarding a one-point acceptance-of-responsibility adjustment under § 3E1.1(a), noting that "the guideline clearly and obviously is limited to the all or nothing adjustment"); *id.* ("[T]he absence of circuit precedent [does not] prevent[] the clearly erroneous application of statutory law from being plain error." (alterations in original) (quoting *United States v. Evans*, 155 F.3d 245, 252 (3d Cir. 1998))); *accord United States v. Poe*, 556 F.3d 1113, 1129 (10th Cir. 2009). However, Mr. Finnesy does not elaborate on this plain-error contention, and we cannot conclude that the plain terms of § 5G1.3(b) and § 1B1.3 speak to the consecutive-concurrent issue before us in a

sufficiently clear or obvious manner so as to satisfy the second prong of plain-error review.

In sum, we conclude that Mr. Finnesy has not demonstrated under the circumstances of this case that the district court clearly or obviously erred in not applying § 5G1.3(b) in determining whether to run Mr. Finnesy's federal escape-from-custody offense concurrently with his undischarged state sentence. More specifically, neither the record nor well-settled law supports Mr. Finnesy's contention that the district court plainly erred in not applying § 5G1.3(b). Therefore, Mr. Finnesy has not carried his burden under the plain-error test.

## C

Mr. Finnesy's third and final claim of error is that the district court improperly denied an acceptance-of-responsibility downward adjustment under U.S.S.G. § 3E1.1(a) "solely because the government refused to recommend [it]." Aplt.'s Opening Br. at 24 (bold font omitted). Mr. Finnesy contends that this challenge is preserved for appellate review "[b]ecause [he] objected below." *Id.* He asserts that the proper standard of review for his challenge is de novo because it presents "a legal question" concerning "[t]he scope of § 3E1.1(a)." *Id.* Here, again, the government disagrees both as to the proper standard of review and on the merits. Aplee.'s Resp. Br. at 16.

As we discuss below, we conclude that Mr. Finnesy forfeited his third

claim of error and is therefore entitled to only review for plain error. *See, e.g.,*

*McGehee*, 672 F.3d at 876.[13]  And, as with his first two claims, Mr. Finnesy has

---

[13]     The government's position on the preservation question is somewhat unclear.  It expressly asserts in its brief that Mr. Finnesy did not preserve his acceptance-of-responsibility argument before the district court, contending that Mr. Finnesy "did not object when given the opportunity" to do so, in response to "the district court's retraction of the two points for acceptance of responsibility." Aplee.'s Resp. Br. at 16–17.  But, curiously and mistakenly, the government contends that, because of Mr. Finnesy's lack of preservation, his acceptance-of-responsibility argument should be "reviewed for clear error," *id.* at 17, which of course is the standard ordinarily applied to preserved factual contentions of error, *see, e.g.*, HARRY T. EDWARDS & LINDA A. ELLIOTT, FEDERAL STANDARDS OF REVIEW: REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS, ch. II, Westlaw (database updated Feb. 2018) (noting that "most findings of fact" are subject to the clearly-erroneous standard of review).  Nevertheless, the government should get some "benefit" for taking the "step" of alerting us to Mr. Finnesy's lack of preservation, even though it failed to properly identify the resulting standard of review.  *McGehee*, 672 F.3d at 873 n.5; *see id.* (noting that "the government *did* contend at oral argument that Mr. McGehee failed to preserve the acceptance-of-responsibility argument—albeit [incorrectly] on grounds that he purportedly forfeited it, rather than waived it").  In any event, we have the discretion to independently give proper effect to a party's lack of preservation.  *See id.* (deeming the defendant's acceptance-of-responsibility argument waived, even though the government claimed that it was forfeited).  As explicated *infra*, Mr. Finnesy insists that he did preserve his acceptance-of-responsibility argument, despite the government's contentions to the contrary. However, he notably does not see fit to make—as he did with his § 5G1.3(b) argument—an alternative argument (even in his reply brief) for plain-error review to address the possibility that we would disagree with him and conclude that he did not preserve his argument.  The consequences of such an omission can be severe: we may deem the argument "effectively waived" and not consider it at all. *Fish v. Kobach*, 840 F.3d 710, 729–30 (10th Cir. 2016); *accord Havens v. Colo. Dep't of Corrs.*, 897 F.3d 1250, 1259–60 (10th Cir. 2018).  However, in instances of lack of preservation, we have the discretion to decide what issues we consider.

(continued...)

51

not made a sufficient showing to satisfy this rigorous standard of review as to his third claim.

## 1

The parties dispute whether Mr. Finnesy preserved before the district court the acceptance-of-responsibility argument that he presents on appeal. We conclude that he did not.

In arguing to the contrary, Mr. Finnesy points to his objection to the district court's decision to grant the government's motion to determine. The government alleged in that motion that the plea agreement was conditioned on Mr. Finnesy continuing to evince an acceptance of responsibility and that he had violated this condition by engaging in post-plea-agreement criminal conduct while in prison, including "possessing a 'shank' and using it to harm another inmate." R., Vol. 1, at 30. Because of the alleged breach, the government sought in its motion to be relieved of its own plea-agreement obligations. Mr. Finnesy supports his claim

---

[13](...continued)
*See, e.g.*, *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary."). And, especially given the miscue of the government concerning the proper standard of review for lack of preservation, we are inclined to exercise our discretion to consider Mr. Finnesy's argument—but only under "our rigorous plain-error standard of review." *McGehee*, 672 F.3d at 873, 876 (after concluding that Mr. McGehee "ha[d] waived" his acceptance-of-responsibility argument, proceeding to consider it under "our rigorous plain-error standard of review").

that his objection to the motion to determine preserves his current acceptance-of-responsibility argument by noting that the district court denied him an acceptance-of-responsibility adjustment, "[c]iting nothing other than the grant of this motion [i.e., the government's motion for a determine]." Aplt.'s Opening Br. at 24.

We are not persuaded, however, by Mr. Finnesy's preservation argument. In order for Mr. Finnesy to succeed on this argument, we must accept the tacit premise that his objection to the district court's decision to grant the government's motion to determine was effectively also an objection to the basis for the district court's separate decision to deny Mr. Finnesy an acceptance-of-responsibility adjustment under § 3E1.1(a). Put another way, we must accept the premise that Mr. Finnesy's motion-to-determine objection was sufficient to properly put the district court on notice that he also was objecting to the court's basis for denying his acceptance-of-responsibility adjustment. We decline to accept this premise.

Even though the general subject matter of the government's motion to determine was Mr. Finnesy's alleged failure to continue manifesting an acceptance of responsibility for his charged offense by continuing his criminal conduct in prison, as the government rightly points out, the motion to determine did not ask the district court to "retract" Mr. Finnesy's acceptance-of-responsibility adjustment. Aplee.'s Resp. Br. at 17. In other words, the

53

government did not seek such a retraction or disallowance of the acceptance-of-responsibility adjustment as part of its requested relief in its motion to determine. Indeed, there is not so much as even a single citation to § 3E1.1(a) in that motion. Accordingly, we are hard pressed to accept the premise that when Mr. Finnesy objected to the district court's decision to grant the government's motion to determine he adequately preserved an objection to the district court's separate decision to deny him an acceptance-of-responsibility adjustment—let alone preserved an objection to the precise basis for that separate decision. And, after the district court did make that separate decision, the court gave Mr. Finnesy ample opportunity to make the exact objection that he does here to the court's supposed sole reliance "on the government's refusal to recommend the [acceptance-of-responsibility] reduction," Aplts.'s Opening Br. at 28, but Mr. Finnesy failed to do so, *see* R., Vol. III, at 40–41 (Mr. Finnesy's counsel responding "[n]o, Your Honor," when the court inquired, "[a]re there any other objections or issues that need to be brought up with respect to the presentence investigation report?"). Therefore, we perceive no basis to conclude that Mr. Finnesy preserved his acceptance-of-responsibility argument.

In attempting to forestall this conclusion, Mr. Finnesy is willing to concede that his was only a "general objection." Aplt.'s Opening Br. at 24 n.4. But, citing our decision in *United States v. Lozano*, 514 F.3d 1130 (10th Cir. 2008), he

asserts that his general objection should be deemed "sufficient to preserve this issue [i.e., his acceptance-of-responsibility argument] for appeal." Aplt.'s Opening Br. at 24 n.4. We disagree. It is well established that such general objections to a district court's rulings are typically insufficient to preserve an argument on appeal. *See United States v. Sharp*, 749 F.3d 1267, 1291 (10th Cir. 2014) (in view of the "general objections" lodged by defendant's counsel in district court, concluding that "plain error review applies to [defendant's] challenges to the procedural reasonableness of the [sentence] imposed by the district court," given that "[n]othing about these general objections was sufficient to alert the district court to the more-specific procedural objections that [defendant] now asserts on appeal"); *United States v. Summers*, 414 F.3d 1287, 1297 n.7 (10th Cir. 2005) (observing that plain-error review applies to issues "not raised *with specificity*" in district court (emphasis added)); *Gilkey*, 118 F.3d at 704 (reviewing for plain error a legal question involving application of the Guidelines, where counsel had failed to "lodge a specific objection based upon either of the issues now presented for the first time on appeal").

And *Lozano* does not give us cause to alter our view. In *Lozano*, "the government concede[ed] that . . . Ms. Lozano preserved her § 3E1.1 argument at the sentencing hearing," and, without analysis, we simply signaled our agreement. *See Lozano*, 514 F.3d at 1134. Moreover, Ms. Lozano actually objected

vigorously to the denial of an acceptance-of-responsibility downward adjustment, although admittedly her objection did not embrace with specificity the error both sides agreed that the district court had made—that is, granting under § 3E1.1(a) "a one-level reduction for partial acceptance of responsibility." *Id.* at 1133–34.

By contrast here, the government does not agree that Mr. Finnesy preserved his acceptance-of-responsibility argument. And, in light of the government's concession in *Lozano*, it was not "essential" for us to resolve a preservation dispute there, as it is here; accordingly, we would best advised to view our agreement with the government in *Lozano* as no more than dictum. *In re Tuttle*, 291 F.3d 1238, 1242 (10th Cir. 2002) ("[D]icta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case at hand.'" (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1811, 1184 (10th Cir. 1995))); *accord United States v. Titties*, 852 F.3d 1257, 1273 (10th Cir. 2017); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 173 (2d Cir. 2004) (observing that the litigant was "correct" in interpreting a comment from the Supreme Court as "dictum" because the subject matter of the comment was not contested before the Court). As such, we are not obliged to follow *Lozano* on this preservation issue. *Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[A] panel of this Court is bound by

56

a holding of a prior panel of this Court but is not bound by a prior panel's dicta."); *accord Tokoph v. United States*, 774 F.3d 1300, 1303 (10th Cir. 2014).

Moreover, even if the *Lozano* court's agreement with the government on the preservation question could be construed as a binding holding (which it cannot), *Lozano* is distinguishable because there the defendant's objection at least related in general terms to the court's action challenged on appeal—its failure to grant an acceptance-of-responsibility adjustment. The same, however, is not true here. Mr. Finnesy's objection before the district court related to the court's grant of the government's motion to determine—which did not even cite the acceptance-of-responsibility provision, § 3E1.1, let alone ask the court to deny Mr. Finnesy an acceptance-of-responsibility adjustment. Therefore, contrary to Mr. Finnesy's contention, it does not logically follow at all that because "the defendant in *Lozano* preserved the legal issue addressed there," that Mr. Finnesy did "so too." Aplt.'s Opening Br. at 25 n.4. In sum, *Lozano* is not controlling precedent on the preservation question before us, and, in any event, is distinguishable and does not avail Mr. Finnesy.

In order to preserve his acceptance-of-responsibility challenge for appeal, Mr. Finnesy was obliged to bring it to the district court's attention. We conclude that he did not. Accordingly, Mr. Finnesy is entitled to no more than plain-error review.

**2**

We now turn to the merits of Mr. Finnesy's third and final claim of error—that is, that the district court erroneously denied an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1(a) "solely" because the government did not recommend such a reduction. Aplt.'s Opening Br. at 24. Based on the record before us, however, we cannot conclude Mr. Finnesy has demonstrated that the district court clearly or obviously erred. Therefore, he has failed to satisfy the second element of the plain-error test and cannot prevail on his third claim of error.

Guidelines § 3E1.1(a) provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the sentencing court should "decrease the offense level by 2 levels." The Application Notes provide helpful clarification regarding the scope and focus of this provision. For example, Note 1 states in pertinent part, "[i]n determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following: . . . (B) voluntary termination or withdrawal from criminal conduct or associations[.]" U.S.S.G. § 3E1.1 cmt. n.1(B). "The [G]uidelines do *not*, however, qualify that factor to permit consideration of only criminal conduct related to or of the same nature as the offense of conviction." *United States v. Prince*, 204 F.3d 1021, 1023 (10th Cir. 2000) (emphasis added). Indeed, in

58

*Prince*, "[w]e join[ed] the majority of circuits and h[eld] that the [G]uidelines do not prohibit a sentencing court from considering, in its discretion, criminal conduct unrelated to the offense of conviction in determining whether a defendant qualifies for an adjustment for acceptance of responsibility under § 3E1.1." *Id.* at 1024; *see, e.g.*, *United States v. Jordan*, 549 F.3d 57, 61 (1st Cir. 2008) ("Criminal conduct, whatever its nature, is a powerful indicium of a lack of contrition. Thus, we hold that a district court, in determining the propriety vel non of an acceptance-of-responsibility credit, may consider a defendant's commission of any post-indictment criminal conduct, whether or not it bears a significant connection to, or constitutes a significant continuation of, the offense of conviction. In other words, no particular nexus is required.").

Mr. Finnesy contends, however, that "nothing within § 3E1.1 suggests that subsection (a)'s application turns on whether the government thinks the defendant has accepted responsibility," and that the district court was thus wrong to deny Mr. Finnesy an acceptance-of-responsibility adjustment based solely on the government's failure to recommend that he receive it. Aplt.'s Opening Br. at 26. He notes that while further acceptance-of-responsibility credit under § 3E1.1(b) is expressly conditioned on the filing of a "motion of the government," § 3E1.1(a), on the other hand, contains no such express requirement, Aplt.'s Opening Br. at 28 ("As applied to § 3E1.1, only subsection (b) requires a government motion; by

59

its plain terms, subsection (a) does not."); *see also* U.S.S.G. § 3E1.1 cmt. n.1 (enumerating a non-exhaustive list of "appropriate considerations" under § 3E1.1(a) and not including consent of the government among them). The government does not appear to disagree with Mr. Finnesy's assertion that a sentencing court's decision concerning a § 3E1.1(a) downward adjustment does not properly turn on the government's favorable recommendation. But the government does contend that the record does *not* show that the district court relied on the government's lack of recommendation concerning Mr. Finnesy's accept responsibility in denying him an acceptance-of-responsibility downward adjustment.

We conclude that, even assuming Mr. Finnesy's interpretation of § 3E1.1(a) is correct—*viz.*, that a court's determination under § 3E1.1(a) on whether to grant a defendant a downward adjustment for acceptance of responsibility does not properly turn on the government's recommendation (or position) concerning the defendant's acceptance of responsibility—the record does not make it clear or obvious that the district court relied on the government's failure to recommend that Mr. Finnesy receive an acceptance-of-responsibility adjustment in denying him that adjustment.[14]

---

[14]     In assuming that Mr. Finnesy's interpretation of § 3E1.1(a) is correct, we do not intimate any view on the matter, much less definitively resolve it.

(continued...)

60

Indeed, we think the natural reading of the record is to the contrary: that the district court denied Mr. Finnesy's a downward adjustment for acceptance of responsibility because it independently found—after an evidentiary hearing on the government's motion to determine—that Mr. Finnesy failed to voluntarily terminate or withdraw from criminal conduct. Such a finding would properly support the court's denial of the adjustment. Indeed, in *Prince*, on similar facts we concluded that "the district court's denial of an adjustment for acceptance of responsibility based on reports of defendant's criminal conduct in prison while awaiting sentencing was not legal error." 204 F.3d at 1024; *see id.* at 1022–23 (noting that the government received reports that "[w]hile defendant was in custody awaiting sentencing, . . . defendant stabbed another prisoner").

In this regard, the district court expressly found that Mr. Finnesy "initiated the physical conduct" with another inmate that constituted "a battery"—striking "the first blow" on the inmate with a "shank . . . that caused the puncture wounds

---

[14](...continued)
Notably, Mr. Finnesy does not cite in his briefing any Supreme Court or Tenth Circuit authority that has directly endorsed his view, an omission that ordinarily, for the reasons noted *supra*, would fatally undercut Mr. Finnesy's attempt to show plain error. *See, e.g., Knight*, 659 F.3d at 1293. Having said that, Mr. Finnesy seems to lean heavily on the "plain terms" of § 3E1.1(a), Aplt.'s Opening Br. at 28, and we recognize that the plain terms of a statute or regulation in certain instances can form the foundation for a plain-error finding, *see, e.g., Brown*, 316 F.3d at 1158. However, in light of our assumption here, we have no occasion to determine the correctness of Mr. Finnesy's interpretation of § 3E1.1(a).

in the victim." R., Vol. III, at 39–40. It also determined that the Barton County captain's testimony regarding Mr. Finnesy's purported involvement in trafficking contraband constituted "evidence of contraband being there." *Id.* at 40. And later in the proceedings, without any reference to the government's motion to determine, the court seemingly confirmed this finding of Mr. Finnesy's continued, post-arrest criminal conduct and its nexus to his lack of acceptance of responsibility by referencing Mr. Finnesy's "refusal to accept responsibility even on a going-forward basis." *Id.* at 53.

To be sure, some of the district court's comments (which Mr. Finnesy highlights) could be read as suggesting a connection—even a causal one—between the court's decision to accept the government's position in its motion to determine that Mr. Finnesy failed to accept responsibility by engaging in post-plea-agreement criminal conduct while in prison, *and* the court's decision to deny Mr. Finnesy a downward adjustment for acceptance of responsibility. *See, e.g.*, *id.* at 40 ("So on the basis of this evidence that I've heard in this court, I am going to grant the [g]overnment's motion that Mr. Finnesy has breached his plea agreement; *therefore*, [he] is not entitled to the acceptance of responsibility reduction of two points in this case." (emphasis added)); *id.* at 57 ("The court determines that the [PSR], as previously corrected or modified by the [c]ourt or, I should say, adjusted *pursuant to the Government's motion which I sustained to*

*revoke acceptance of responsibility* and the previously stated findings, are [sic] accurate." (emphasis added)).

However, this should not be surprising, and it does not necessarily mean that the court's acceptance of the government's position was a factor—let alone the sole one—in the court's determination to deny Mr. Finnesy the acceptance-of-responsibility downward adjustment. That is because the same evidence that allowed the district court to accept the government's position (advanced first in its motion to determine) that Mr. Finnesy had failed to accept responsibility—within the meaning of the plea agreement—also would have permitted the district court to independently find that Mr. Finnesy did not qualify for an acceptance-of-responsibility downward adjustment because he had failed to "voluntar[ily] terminat[e] or withdraw[] from criminal conduct"—within the meaning of the Guidelines. U.S.S.G. § 3E1.1 cmt. n.1(B).

That the district court relied on the same evidence in reaching the two distinct decisions—to accept the government's position in its motion to determine concerning Mr. Finnesy's failure to accept responsibility and to deny Mr. Finnesy an acceptance-of-responsibility downward adjustment under § 3E1.1(a)—does not necessarily mean that every factor that was central to the first decision was important to—let alone determinative of—the second one. More specifically, the fact that the impetus for the first decision was the government's position that Mr.

Finnesy's continued criminal conduct evinced a failure to accept responsibility, as required by his plea agreement, does not mean that this position was a factor—let alone the sole factor—in the court's second, evidence-based decision to deny Mr. Finnesy an acceptance-of-responsibility downward adjustment. And, the existence of such a causal relationship between the first and second decisions is not the natural inference from the record.

Viewed in the light most favorable to Mr. Finnesy, at best, the district court's comments make the record ambiguous concerning whether the court relied on the government's position that Mr. Finnesy failed to accept responsibility in denying him an acceptance-of-responsibility downward adjustment. As such, Mr. Finnesy cannot demonstrate with the requisite degree of clarity under the plain-error standard that the district court erred. In other words, Mr. Finnesy cannot establish that the district court committed clear or obvious error in denying him an acceptance-of-responsibility downward adjustment. Therefore, Mr. Finnesy's last claim of error fails.

### III

For the foregoing reasons, each of Mr. Finnesy's claims of error fails. We accordingly **AFFIRM** Mr. Finnesy's conviction and sentence.