FILED
United States Court of Appeals
Tenth Circuit

January 18, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 21-2136

JOSHUA LEIB,

    Defendant - Appellant.

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:18-CR-03658-JCH-1)**

_____

Erlinda O. Johnson, The Law Office of Erlinda O. Johnson, Albuquerque, New Mexico, for Appellant Leib.

Emil J. Kiehne, Assistant U.S. Attorney (Alexander M. M. Uballez, U.S. Attorney, with him on the brief), Albuquerque, New Mexico, for Appellee United States of America.

_____

Before **CARSON**, **EBEL**, and **ROSSMAN**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

In this direct criminal appeal, Defendant Joshua Leib challenges the

100-month sentence he received for his conviction for being a previously convicted

felon in possession of a firearm. The specific sentencing question presented by this

appeal is whether the district court clearly erred in calculating Mr. Leib's advisory prison range under the sentencing guidelines by enhancing his base offense level under U.S.S.G. § 2K2.1(b)(6)(B). That guideline adds four offense levels if a defendant used a firearm in connection with another felony; here, that other felony was shooting at a dwelling in violation of New Mexico law. We conclude there was sufficient evidence for the sentencing court to find, by a preponderance of the evidence, that this enhancement applied in Mr. Leib's case. Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we, therefore, AFFIRM Mr. Leib's sentence.

## I. BACKGROUND

The following facts are undisputed. On August 28, 2018, Mr. Leib, in his mid-fifties, was living with his parents in their Albuquerque home. Mr. Leib had a long and violent criminal history and ongoing problems with substance abuse and mental illness. Distraught because his father was gravely ill, Mr. Leib left the house, became intoxicated, returned to the home and went into his bedroom. Soon thereafter, Mr. Leib's mother's friend called police to report shots being fired in the Leib home. A police dispatcher called Mr. Leib's mother, Norma Leib, who reported that she had heard three gun shots in her home, her son may have shot himself, and she was hiding in another bedroom in the house.

When responding officers approached the Leib home, they saw an empty gun case and ammunition in plain view on the passenger floorboard of Mr. Leib's vehicle parked in the driveway. Norma Leib met officers in the driveway and explained that

2

her ill husband was unconscious in his bedroom, while Mr. Leib was in his own bedroom. Although Mr. Leib had not made any suicidal or homicidal statements, Norma Leib expressed her concern that Mr. Leib "may be laying there dead for all I know." (I R. 106.) When officers outside the home were unsuccessful in getting Mr. Leib to respond, they looked into the open window in his first-floor bedroom and saw Mr. Leib passed out on the floor. Officers determined that Mr. Leib was alive but "very drunk" (id. at 107 (alteration omitted)), and that there was a firearm on the floor near Mr. Leib. Officers then entered Mr. Leib's bedroom and seized the firearm for safe-keeping, along with six spent shell casings. After an officer standing in Mr. Leib's bedroom commented that he did not see any bullet holes in the walls or ceiling, Norma Leib, who had followed the officers to Mr. Leib's bedroom, stated that Mr. Leib had shot the gun into the floor. Officers determined that Mr. Leib did not require medical attention and left. The incident was recorded by the officers' body cameras.

Based on this incident, the State of New Mexico initially charged Mr. Leib with 1) shooting at a dwelling and 2) unlawful possession of a firearm by a felon. The State dropped those charges, however, when the United States indicted Mr. Leib on the federal offense of being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Leib pled guilty to that federal offense.

In preparation for sentencing, the amended presentence report ("PSR") determined Mr. Leib's total offense level to be 27, based on the following calculations:

| | |
|---|---|
| base offense (U.S.S.G. § 2K2.1(a)(2)) | 24 |
| firearm was stolen (U.S.S.G. § 2K2.1(b)(4)(A)) | +2 |
| Mr. Leib used or possessed the firearm in connection with another felony offense (U.S.S.G. § 2K2.1(b)(6)(B)) | +4 |
| acceptance of responsibility (U.S.S.G. § 3E1.1) | -3 |
| total offense level | 27 |

Mr. Leib objected to the PSR's application of the four-offense-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for using a firearm in connection with another felony offense. The district court overruled that objection and determined that Mr. Leib's total offense level was 27 and his criminal history category was VI, resulting in an advisory guideline range of 130 to 162 months in prison. But because, by statute, Mr. Leib's offense of conviction was punishable by no more than ten years in prison, see 18 U.S.C. § 924(a)(2) (subsequently amended and renumbered), his guideline range became 120 months. See U.S.S.G. § 5G1.1(a). At sentencing, the district court varied downward from that range to impose a 100-month prison sentence to be followed by a three-year term of supervised release. On appeal, Mr. Leib challenges the application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

4

## II. STANDARD OF REVIEW

"When evaluating sentence enhancements under the Sentencing Guidelines, this Court reviews the district court's factual findings for clear error and questions of law de novo." United States v. McDonald, 43 F.4th 1090, 1095 (10th Cir. 2022). In particular, we review the application of § 2K2.1(b)(6)(B) in a given case for clear error. See United States v. Sanchez, 22 F.4th 940, 942 (10th Cir. 2022). Thus, "we will not disturb the district court's factual findings unless they have no basis in the record" and, in reviewing the record, "we view the evidence and inferences therefrom in the light most favorable to the district court's determination." United States v. Hoyle, 751 F.3d 1167, 1174 (10th Cir. 2014).

## III. DISCUSSION

"The government has the burden of proving, by a preponderance of the evidence, that Section 2K2.1(b)(6) applies." United States v. Kitchell, 653 F.3d 1206, 1226 (10th Cir. 2011). Section § 2K2.1(b)(6)(B) adds four offense levels if a defendant convicted of unlawfully possessing a firearm "used or possessed any firearm or ammunition in connection with another felony offense." "'Another felony offense,' for purposes of subsection (b)(6)(B), means any federal, state, or local offense, other than the . . . firearms possession . . . offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. cmt. 14(C).

In this case, the district court found that Mr. Leib used the firearm he unlawfully possessed in connection with the felony of shooting into a dwelling in

violation of N.M. Stat. § 30-3-8(A).[1]  That state offense required proof that Mr. Leib "willfully" shot a firearm, targeting a building that he knew to be a dwelling.  See N.M. Cr. UJI 14-340A (2014); State v. Comitz, 443 P.3d 1130, 1136 (N.M. 2019). "Willfully" under New Mexico law means "conscious or intentional conduct."  State v. Coleman, 264 P.3d 523, 528–29 (N.M. Ct. App. 2011) (quoting State v. Varela, 993 P.2d 1280, 1291 (N.M. 1999)).  It was not enough, then, for the Government to show that Mr. Leib discharged a gun in the home or that somehow bullets ended up in the dwelling.  See Comitz, 443 P.3d at 1136–37 (overturning felony murder conviction based on the felony of shooting at a dwelling where the evidence showed only that the defendant "specifically and primarily targeted," not the dwelling, but particular individuals standing in front of a house).  The Government had to show that the house was Mr. Leib's "principal target."  Id. at 1137.

---

[1] New Mexico Stat. § 30-3-8(A) states in full:

> Shooting at a dwelling or occupied building consists of willfully discharging a firearm at a dwelling or occupied building. Whoever commits shooting at a dwelling or occupied building that does not result in great bodily harm to another person is guilty of a fourth degree felony. Whoever commits shooting at a dwelling or occupied building that results in injury to another person is guilty of a third degree felony. Whoever commits shooting at a dwelling or occupied building that results in great bodily harm to another person is guilty of a second degree felony.

This statute appears to be aimed primarily at drive-by shootings.  We doubt that the New Mexico legislature had the scenario presented in this case—shooting into the floor of a single family home from inside the house—in mind when it enacted this criminal statute.  Nevertheless, the statute's language is broad enough to cover the situation presented here.

On appeal, Mr. Leib does not dispute that he possessed and discharged a firearm in his bedroom and that he knew that he was in a dwelling. Nor does he challenge on appeal the district court's determination that firing a gun inside a dwelling can support a conviction under N.M. Stat. § 30-3-8(A) for shooting at a dwelling.[2] Mr. Leib challenges only the sufficiency of the Government's evidence to establish that he "willfully" targeted the dwelling.[3]

In finding that Mr. Leib willfully shot at the dwelling, the district court ruled:

> I agree with several things [defense counsel] has pointed out. The neighbor reported hearing shots from the house, the defendant's mother heard the shots herself, and was concerned that her son may have shot himself.

> I agree with some of things that the Government has pointed out . . . . It doesn't appear that there was another person who was a target of those shots and so the defendant argues that the only evidence points to himself being the target. I agree with the prosecutor's argument that . . . the defendant had attempted suicide in the past and harmed himself. He didn't . . . succeed in killing himself, but he did harm himself. In this case, the defendant was not harmed at all by the shooting.

> The thing I find the most persuasive is the [state] criminal complaint that is attached to the defendant's objection . . . .

---

[2] The New Mexico Supreme Court, in a "nonprecedential decision," has upheld a conviction for shooting at a dwelling, based on the defendant shooting both into the ceiling of an apartment and by shooting at someone when the bullet lodged in the outside wall of an apartment. See State v. Pagan-Rivera, No. S-1-SC-34832, 2015 WL 5512011, at *14 (N.M. Sept. 17, 2015) (unpublished).

[3] For the first time in his reply brief, Mr. Leib also asserts that the sentencing court procedurally erred by failing to make adequate findings to support application of the enhancement to Mr. Leib's case. Because Mr. Leib did not previously raise that specific argument, however, he has waived it. See United States v. Leffler, 942 F.3d 1192, 1197 (10th Cir. 2019).

> And this is the part I find persuasive. "I heard Norma [Leib] stating Josh shot three rounds into the floor, somewhere in his room."
>
> So taking that statement, it certainly sounds to me like the Government has met its burden by a preponderance of the evidence that Josh shot three rounds into the building. The fact that he was in the house doesn't change the analysis. It wasn't just one shot that happened to be fired, it was three shots, and all three rounds were shot into the floor, somewhere in his room.
>
> So that sounds to me like the building was the intended target, especially when you take into consideration that it wasn't just one random shot, it was actually three. So I do think that the Government has met its burden, and I will overrule the defendant's objection.

(IV R. 133–35.) The district court, thus, found that Mr. Leib willfully shot into the floor of his bedroom, relying on the totality of the circumstances and in particular Mr. Leib's mother Norma's statement that Mr. Leib fired the gun into the floor. The district court's analysis was not clearly erroneous.

"[V]iew[ing] the evidence and inferences therefrom in the light most favorable to the district court's determination," Hoyle, 751 F.3d at 1174, the totality of the circumstances indicated that Mr. Leib did not shoot at anyone. There was no one else in his room and he had not made any homicidal statements. Further, the district court reasonably inferred that, because Mr. Leib had fired three shots, he did not accidentally discharge the gun.

Defense counsel asserts that Mr. Leib must have been trying to kill himself and, therefore, he was the likely target of the shots—not the house. But there is no evidence to support that assertion. Norma Leib told police officers that Mr. Leib, although distraught, had not made any suicidal statements. Furthermore, the district

8

court reasonably inferred that, when Mr. Leib had previously tried to kill himself, he had caused harm to himself, as reported in the PSR (III R. (sealed) 29 ¶¶ 101–03). Yet on this occasion, Mr. Leib fired a gun three times and he remained uninjured.

Defense counsel points to Norma Leib's statements to police that she feared Mr. Leib had shot himself. But at the time Norma Leib made those statements, she did not know what had happened. It was only after Norma Leib followed officers to her son's bedroom—and discovered that he was unharmed and that there were no bullet holes in the walls or ceiling of his bedroom—that she stated that her son had shot into the floor.

For the first time on appeal, Mr. Leib argues that the district court erred in relying on his mother's statement that Mr. Leib shot into the floor because it was unreliable hearsay. Because Mr. Leib forfeited this argument by not making it at sentencing, we review for plain error.[4] See Fed. R. Crim. P. 52(b). It is Mr. Leib's burden, then, to establish 1) error 2) that was plain, and 3) that affected his substantial rights. See Greer v. United States, 141 S. Ct. 2090, 2096–97 (2021). If Mr. Leib can make such a showing, we would have discretion to grant relief if "the

---

[4] We disagree with Mr. Leib that he preserved this argument in the district court by objecting generally "to the imposition of the enhancement and the evidence the district court was relying upon to support it." (Aplt. Reply Br. 4.) A general argument to the district court will usually be insufficient to preserve a more specific argument for appeal. See United States v. Finnesy, 953 F.3d 675, 689 (10th Cir. 2020) (holding general request for a concurrent sentence was insufficient to preserve for appeal argument that district court should have applied a specific guideline provision that he had never before mentioned).

error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'" Id. at 2096–97 (quoting Rosales-Mireles v. United States, 138 S. Ct. 1897, 1905 (2018)); see United States v. Ruby, 706 F.3d 1221, 1225–26, 1228 (10th Cir. 2103) (noting that plain-error review applies to argument raised for the first time on appeal that sentencing court erred in relying upon unreliable hearsay). Here, however, Mr. Leib has failed to show any error, let alone plain error.[5]

The evidence before the district court establishing that Norma Leib stated that Mr. Leib shot into the floor was the criminal complaint and arrest warrant affidavit used to initiate the later-dismissed state charges against Mr. Leib. That affidavit was made by a police officer who had reviewed one of the responding officers' body camera recordings. The affiant officer attested that, on that recording, he heard Norma Leib state that Mr. Leib had shot into the floor of his bedroom.

Mr. Leib claims that this evidence of his mother's statement is hearsay. Even so, a sentencing court can rely upon hearsay at sentencing if it is reliable. "While the due process clause protects a defendant's right not to be sentenced on the basis of materially incorrect information, hearsay statements may be considered at sentencing if they bear 'some minimal indicia of reliability.'" United States v. Cook, 550 F.3d 1292, 1296 (10th Cir. 2008) (quoting United States v. Browning, 61 F.3d 752, 755 (10th Cir. 1995)); see also United States v. Martinez, 824 F.3d 1256, 1260 n.5 (10th Cir. 2016).

---

[5] Although Mr. Leib did not address the plain-error analysis until his reply brief, we exercise our discretion to consider Mr. Leib's arguments. See United States v. Portillo-Uranga, 28 F.4th 168, 177 (10th Cir. 2022).

See generally U.S.S.G. § 6A1.3, cmt. ("In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial.").

Norma Leib's statement meets the required "some minimal indicia of reliability" standard. As just explained, the totality of the circumstances corroborated Norma Leib's statement that Mr. Leib intentionally fired several shots into the floor of his bedroom. See Ruby, 706 F.3d at 1229 ("Corroborating evidence is often key to determining whether a statement is sufficiently reliable."); see also Martinez, 824 F.3d at 1263.

Moreover, there is nothing in the record to suggest that Norma Leib had any bias against Mr. Leib which might prompt her to incriminate Mr. Leib falsely. To the contrary, one of the next things Norma Leib said to the officers after stating that Mr. Leib had shot into the floor was to decline to act as a witness against her son on a state charge of negligently discharging a firearm in a house.

This case, then, is distinguishable from United States v. Fennell, 65 F.3d 812 (10th Cir. 1995), on which Mr. Leib relies. In Fennell, this court did rule that the sentencing court erred in applying a sentencing enhancement based on unreliable hearsay. See 65 F.3d at 813–14. In that case, the government tried to support applying a sentencing enhancement for using an unlawfully possessed firearm during a felony assault using evidence that the defendant fired a machine gun at his girlfriend. Id. at 813. The only evidence of that fact, however, was the unsworn statement from the girlfriend taken over the telephone by the probation officer preparing the presentence report. Id. Fennell held that, although "[t]he Sentencing

11

Guidelines do not set a high threshold of reliability, . . . more is required than . . . [u]nsworn out-of-court statements made by an unobserved witness and unsupported by other evidence." Id. at 813-14.

Here, on the other hand, although Norma Leib's statement that Mr. Leib shot into the floor was unsworn, it was observed by the three responding police officers and by the affiant officer who reviewed the body camera audio and video recording. Moreover, as previously discussed, the totality of the circumstances presented here corroborated Norma Leib's statement that Mr. Leib shot into the floor. Fennell, then, is distinguishable. See Martinez, 824 F.3d at 1262 (distinguishing Fennell on a similar basis); United States v. Caiba-Antele, 705 F.3d 1162, 1166 (10th Cir. 2012) (same); Cook, 550 F.3d at 1296–97 (same).

The district court, therefore, did not err in relying in part on Norma Leib's statement that her son shot into the floor of his bedroom to apply U.S.S.G. § 2K2.1(b)(6)(B)'s four-offense-level enhancement.

## IV. CONCLUSION

Because there was sufficient information for the sentencing court to find, by a preponderance of the evidence, that Mr. Leib committed the New Mexico felony of willfully shooting at a dwelling, the court did not clearly err in applying U.S.S.G. § 2K2.1(b)(6)(B)'s four-offense-level enhancement. We, therefore, AFFIRM Mr. Leib's sentence.