FILED
United States Court of Appeals
Tenth Circuit

March 2, 2023

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AHMAD AUSTIN,

Defendant - Appellant.

No. 22-3040
(2:21-CR-20012-HLT-TJJ-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH, SEYMOUR,** and **PHILLIPS,** Circuit Judges.

_____

Ahmad Austin pled guilty to being a felon in possession of a firearm in violation

of 18 U.S.C. § 922(g)(1).  At sentencing, he received a four-level enhancement under

U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with an

aggravated assault.  On appeal, Mr. Austin contends that the district court clearly erred in

applying § 2K2.1(b)(6)(B) because there is no reliable evidence to support the

enhancement.  We conclude there was sufficient evidence for the sentencing court to

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

find, by a preponderance of the evidence, that the enhancement applied in Mr. Austin's case and we therefore affirm.

## Background

In the early morning of September 8, 2020, Mr. Austin and his partner of twenty-four years, Jasmine Moten, were arguing loudly in their home in Lawrence, Kansas. Three of their children were asleep in the home. At some time around 6:00 a.m., Ms. Moten came into the room of her 15-year-old son ("A.A."), gave him her phone, and told him to call 911 because Mr. Austin had hit her with a gun. A.A. heard the front door shut and saw his parents leaving in his father's Dodge Charger through the window.

A.A. called 911 as instructed. Thereafter, Officer J. Risner and another officer were dispatched to the home where they interviewed A.A. Officer Risner indicated in his incident report that A.A. confirmed the basic facts described above. Officer Meghan Bardwell also visited the home and interviewed A.A. and his 12-year-old brother ("N.A."). During this conversation, which was captured on Officer Bardwell's lapel camera, A.A. again confirmed the basic facts of the incident, including that his mother said Mr. Austin had a gun. He stated, "I think she said she got hit with it." Aplt. Supp. App., vol. II at 7:01–7:03 (Officer Bardwell's Body Camera Footage). When Officer Bardwell asked if Mr. Austin had done this before, A.A. responded that he had not hit her with a gun before. Officer Bardwell then recounted the events as she understood them: "So this morning she steps in and says, 'Call the police your dad hit me with a gun.'" *Id.* at 7:38–7:43. A.A. affirmatively nodded. After additional questioning, Officer Bardwell again recounted the events: "At about five or six you hear them yelling . . . and then mom

pushes the door open and says, 'Hey call the cops your dad hit me with a gun.' And then she just walks out of your room." *Id.* at 9:00–9:13. A.A. again gave multiple affirmative nods, and responded, "Yeah." *Id.* at 9:13. A.A. told Officer Bardwell that he was "confused, kind of scared" and that his mother appeared scared and did not want to leave with his father. *Id.* at 7:10–7:18, 7:58–8:03. A.A. also described the firearm his father had access to as a silver Smith & Wesson handgun with black grips.

Officer Bardwell asked N.A. about the argument as well. N.A. indicated that while his parents' arguments were not typically violent, he felt like this particular argument was or could have been "super violent." *Id.* at 2:11–2:20. N.A. told Officer Bardwell that Ms. Moten went into A.A.'s room to call 911 and spoke to A.A. before leaving.

That same morning, police were notified that four shots were fired from a silver Dodge Charger at a nearby apartment complex. Officers located the vehicle, and a traffic stop revealed the occupants to be Mr. Austin and Ms. Moten. Officers observed a holster on Mr. Austin's waistband and located two spent shell casings in the vehicle. Officers subsequently interviewed Ms. Moten. She admitted that Mr. Austin came home intoxicated early that morning and that there was some pushing. However, she denied that Mr. Austin hit her with a firearm. She also denied the existence of the firearm and denied discarding it from the vehicle and repeatedly stated that she did not want to be involved. Officers observed some bruising or marks on her cheeks and took photographs which were later admitted into evidence.

3

Officers returned to the apartment complex where the shots had been fired and found a silver Smith & Wesson handgun with black grips. Testing ultimately confirmed that Mr. Austin's DNA was on the gun. In addition, a magazine was found in Mr. Austin's home. Shell casings matching those recovered from the Dodge Charger were also found in his bedroom.

Because Mr. Austin was a convicted felon, it was unlawful for him to possess a firearm. He pled guilty to being a felon in possession in violation of 18 U.S.C. § 922(g)(1).[1]

### The Sentencing Hearing

In February of 2022, the district court held a sentencing hearing during which Mr. Austin objected to the four-level enhancement under § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony—to wit, aggravated assault. Officer Bardwell testified at the hearing and her police report and body camera footage were admitted into evidence. Although Officer Risner did not testify, his police report was admitted into evidence. Neither Mr. Austin, Ms. Moten, nor A.A. testified. However, Mr. Austin did make a statement to the court in which he denied hitting Ms. Moten with the gun but admitted to ownership, possession, discharge, and disposal of the weapon.

In overruling Mr. Austin's objection to the enhancement, the district court provided a lengthy and detailed explanation, including the following statements:

> A.A. reported that he was in fear for his safety and the safety of his mother due to his mother's statements before she left. . . . This interaction is recorded

---

[1] Mr. Austin initially pled guilty pursuant to a binding plea agreement, but the district court later rejected the plea agreement at the joint request of the parties.

4

in Exhibit 3 which the court reviewed. The court observed A.A.'s demeanor throughout that interview and contact with Officer-now-Detective [Bardwell].

. . . .

The court credits the testimony of Officer [Bardwell] and Agent Padilla and their repeated contemporaneous and consistent statements of A.A. A.A. consistently maintained that he heard his parents fighting and that his mother asked him to call 911 after Mr. Austin hit her with a firearm. He described the firearm, admitted that he was scared and concerned, and had no reason or motivation to lie.

The court finds A.A.'s statements and the officer's corresponding testimony and reports credible. A.A.'s statement is also corroborated to some extent by the pictures and the marks on Ms. Moten's cheek. The court recognizes that the [body camera footage shows A.A. stating] that, quote, "I think she said she got hit with it," but Detective [Bardwell] repeated the same question several times and each time he confirmed that Ms. Moten had said she had been hit with a firearm. This is also consistent with the other reports by the initially responding officers in this case.

The court does not credit Ms. Moten's statements to the officers about this issue during her interview. She was willing to admit conduct that would not place Mr. Austin in trouble but denied all information that could get him in trouble. She denied the firearm even though police subsequently located it with his DNA at the apartment complex they were seen exiting. Mr. Austin was also arrested with an empty gun holster. She admitted some pushing but denied that Mr. Austin hit her with the firearm. She would not answer questions about the travel route and repeatedly stated that she did not want to get involved.

Ms. Moten and Mr. Austin have four children together and have been in a relationship for 24 years. She had a motivation to protect him while talking with the officers. Mr. Austin identifies no motive or explanation as to why she would lie when talking to her son or why A.A. would lie to police. The court also notes the reports about witness intimidation and notes that Ms. Moten was involved . . . . This further undercuts her credibility . . . .

For all these reasons, the court finds that the government has established by a preponderance of the evidence that Mr. Austin used or possessed the firearm in connection with the felony offense of aggravated assault against Ms. Moten.

Rec., vol. III at 78–81.

Based on this ruling, the district court calculated the guideline range to be 21 to 27 months and ultimately sentenced Mr. Austin to twenty-four months in prison.

**Standard of Review**

"We review the district court's application of the Sentencing Guidelines for abuse of discretion. In applying that standard, we review questions of law de novo and factual findings for clear error." *United States v. Stein*, 985 F.3d 1254, 1266 (10th Cir. 2021) (internal quotation marks and citation omitted). "In particular, we review the application of § 2K2.1(b)(6)(B) in a given case for clear error." *United States v. Leib*, 57 F.4th 1122, 1125–26 (10th Cir. 2023).[2] To find clear error, "we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) (internal quotation marks omitted).

---

[2] Mr. Austin argues that we should review the application of § 2K2.1(b)(6)(B) de novo because the reliability of a hearsay statement is a mixed issue of law and fact. We decline to deviate from the clear error standard in this case, which we recently reaffirmed as the correct standard. *Leib*, 57 F.4th at 1125–26.

The government also argues that Mr. Austin raises numerous new arguments on appeal that are waived because he has not argued for plain error review. But Mr. Austin's appellate arguments are permissible expansions of arguments made in district court and are not waived.

**Discussion**

Mr. Austin argues the district court impermissibly applied § 2K2.1(b)(6)(B) based on unreliable double hearsay. "While the due process clause protects a defendant's right not to be sentenced on the basis of materially incorrect information, hearsay statements may be considered at sentencing if they bear 'some minimal indicia of reliability.'" *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008) (quoting *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995)); *see also* U.S.S.G. § 6A1.3(a) (stating that sentencing courts may consider evidence inadmissible at trial "provided that the information has sufficient indicia of reliability to support its probable accuracy").[3] District courts may even rely on double hearsay if the statements contain minimal indicia of reliability. *United States v. Basnett*, 735 F.3d 1255, 1261 (10th Cir. 2013). This reliability requirement is a "low hurdle." *Cook*, 550 F.3d at 1296.

"[P]olice reports are neither 'inherently reliable [nor] . . . inherently unreliable.'" *United States v. Ruby*, 706 F.3d 1221, 1230 (10th Cir. 2013) (quoting *United States v. Lloyd*, 566 F.3d 341, 346 (3d Cir. 2009)). "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Id.* at 1229. For example, in *Leib*, 57 F.4th at 1129, we upheld the application of § 2K2.1(b)(6)(B) based on a hearsay statement that was corroborated by "the totality of the circumstances." There, the district court found that the defendant had committed the New Mexico felony of willfully

---

[3] Mr. Austin contends that our precedent requiring only "some minimal indicia of reliability" violates the text of § 6A1.3(a), which requires "sufficient indicia of reliability." We are not persuaded that our precedent is inconsistent with § 6A1.3(a).

shooting at a dwelling. *Id.* at 1126. This finding was based primarily on a statement made by the defendant's mother, indicating that she had heard the defendant fire multiple shots into the floor of his bedroom. *Id.* at 1128. The totality of the circumstances— including the facts that the defendant was alone in his room, did not make any homicidal or suicidal statements, was not injured, and fired multiple shots—signaled that the defendant's conduct was not accidental and that he had not intended to shoot himself or another person. *Id.* at 1127–28. We also noted that there was no reason to believe that the defendant's mother had a motive to lie about her son's conduct. *Id.* at 1129. Furthermore, the mother's statement, although unsworn, was observed by police officers and captured in body camera footage. *Id.*

In contrast, we held in *United States v. Fennell*, 65 F.3d 812, 813–14 (10th Cir. 1995), that the sentencing court erred in applying § 2K2.1(b)(6)(B)[4] based on unreliable hearsay. There, the government argued that the defendant unlawfully possessed a firearm in connection with a felony assault because he allegedly fired a machine gun at his girlfriend. *Id.* at 813. The only evidence of that fact, however, was the unsworn statement of the girlfriend taken over the telephone by the probation officer preparing the presentence report. *Id.* We held that, although "[t]he Sentencing Guidelines do not set a high threshold of reliability, . . . more is required than . . . [u]nsworn out-of-court statements made by an unobserved witness and unsupported by other evidence." *Id.* at 813–14.

---

[4] Section 2K2.1(b)(6)(B) was previously numbered as § 2K2.1(b)(5).

8

Mr. Austin argues that this case is analogous to *Fennell*. We disagree. Here, "other evidence" with sufficient reliability was available to and considered by the district court. For example, the court relied on Officer Bardwell's testimony and multiple, consistent police reports which it deemed credible. It also considered exhibits admitted at the sentencing hearing, including the photographs of Ms. Moten depicting markings on her face and chest and the body camera footage from Officer Bardwell's interview with A.A. Furthermore, the district court made specific findings about Ms. Moten's motivation to protect Mr. Austin and the lack of credibility of her denials of certain facts and events that Mr. Austin admitted to during the sentencing hearing. In particular, Mr. Austin admitted to ownership, possession, discharge, and disposal of the weapon. Ms. Moten, however, denied the existence of the firearm and refused to discuss details of the relevant events, repeatedly stating she did not want to be further involved.

Although an additional layer of hearsay is involved in Mr. Austin's case, it is more similar to *Leib*. Like the defendant's mother in *Leib*, A.A. did not actually witness the enhancement offense being committed. However, law enforcement observed and captured footage of A.A.'s unsworn statement, which the district court reviewed and admitted into evidence without objection. Moreover, like in *Leib*, the court found that the declarants did not have a motivation to lie. Here too, the enhancement is supported by the totality of the circumstances. Both A.A. and N.A. told law enforcement that they were awakened by their parents' argument. A.A. conveyed that both he and his mother were scared. N.A. told Officer Bardwell that he was concerned that this argument, unlike others the couple had, was or would get "super violent." He also said that Ms. Moten

9

went into A.A.'s room to call 911 and spoke to A.A. before she left.  A.A.'s reliability is further bolstered by the fact that he correctly described the gun that was later found with Mr. Austin's DNA.

Mr. Austin argues that the hearsay statement here is contradicted, rather than corroborated, by other evidence.  For example, only Mr. Austin's DNA was found on the weapon.  In addition, none of the children saw or heard Mr. Austin hit Ms. Moten with a firearm while both Mr. Austin and Ms. Moten denied it.  Mr. Austin also notes that A.A. told law enforcement that his mother did not appear to be injured and argues that the marks photographed on Ms. Moten are not consistent with being hit with a gun by a person of Mr. Austin's size and stature.  Relatedly, Ms. Moten told law enforcement that "the marks were from a minor physical altercation" a few days prior.  Rec., vol. I at 44.

A district court could plausibly find, on these facts and others cited by Mr. Austin, that Mr. Austin did not hit Ms. Moten with a firearm.  But the facts cited by Mr. Austin do not make the district court's finding that he did hit Ms. Moten implausible.  As the government points out, the firearm was not tested for the DNA of a person other than Mr. Austin, including Ms. Moten.  Furthermore, the children were sleeping at the time of the incident and both Mr. Austin and Ms. Moten had incentive to deny that he hit her with the gun.  Concerning the photographs of the marks on Ms. Moten, we are not tasked with substituting our judgment for that of the district court to determine whether the photographs corroborate Ms. Moten's statement to A.A. about being struck.  However, we conclude it was not implausible for the district court to find that they were corroborative.  Concerning Ms. Moten's alternative explanation for the marks, we have

10

no reason to question the district court's finding that Ms. Moten was not a credible source. Therefore, the probative value of the contradictory facts cited by Mr. Austin is low.

Mr. Austin also challenges the district court's reasoning, in part because the court stated that A.A. said he feared for his and his mother's safety. This statement appears to be based on Officer Bardwell's investigative report. *See* Rec., vol. I at 42. As Mr. Austin notes, however, Officer Bardwell's body camera footage shows that A.A. did not specifically state that he feared for his or his mother's safety. Rather, he stated that his mother was scared and that he was "confused, kind of scared." To the extent the report does not accurately reflect exactly what A.A. said, we conclude that any error was harmless. A.A. told Officer Bardwell that his mother did not want to leave the home when she left with Mr. Austin. The district court also reviewed the footage and observed A.A.'s demeanor. The court could fairly conclude based on all the statements A.A. made and his demeanor that he feared for his and his mother's safety. Furthermore, the court's remark about A.A.'s fear is only one statement in a very long and detailed explanation and does not appear to have weighed heavily in the decision to deny Mr. Austin's objection.

Finally, Mr. Austin argues that the district court erroneously focused on the credibility of A.A.'s statements and corresponding testimony and reports from law enforcement instead of the reliability of Ms. Moten's statement to A.A. We disagree. First, the district court needed to find that A.A. and the involved law enforcement officers were credible to apply the enhancement. Second, the reliability of Ms. Moten's statement

11

to A.A. was sufficiently established below.  Although the district court stated that the photographs of the marks on Ms. Moten corroborated A.A.'s statement, they also corroborated Ms. Moten's statement to A.A.  The court considered Ms. Moten's credibility and specifically found that she was not credible when she denied being struck by the firearm.

Furthermore, the district court noted that Mr. Austin offered no explanation for why Ms. Moten would lie to her son.  Mr. Austin argues that, in doing so, the court impermissibly shifted the burden of proof to him.  However, the district court did not err in noting that Mr. Austin had not presented an alternative explanation.  To the contrary, the district court plainly determined the *government* established that the enhancement applied by a preponderance of the evidence.  This finding was both plausible and permissible in light of the entire record on appeal.

### Conclusion

Based on the foregoing, we are not persuaded that the district court committed clear error in applying the sentencing enhancement.  Accordingly, we affirm. Appellant's motion to expedite is denied.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

12