FILED
United States Court of Appeals
Tenth Circuit

May 1, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAUL LUJAN,

    Defendant - Appellant.

No. 22-2157
(D.C. No. 1:20-CR-01691-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Defendant Paul Lujan escaped from the Dierson Residential Reentry Center on July 23, 2020. Lujan pleaded guilty to one count of escape. At sentencing the parties disputed whether Lujan had committed state offenses while on escape, rendering him ineligible for a four-level reduction in offense level. The district court held a hearing to determine whether the United States had established by a preponderance of the evidence that Lujan committed the alleged offenses. At the hearing the district court

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

heard the testimony of the responding officer and the statements of two victims. The district court subsequently denied the four-level reduction. In this case, we conclude that the district court did not err in finding the testimony given at the sentencing hearing reliable enough to establish that Lujan committed state offenses while on escape status. Accordingly, we affirm.

## I.

On April 11, 2018, Paul Lujan was convicted of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). He was sentenced to sixty months' imprisonment. On June 29, 2020, the Bureau of Prisons ("BOP") placed Lujan at the Diersen Charities, Diersen Residential Reentry Center ("RRC") to serve out the remainder of his sentence. On July 23, 2020, Lujan, who was still in the custody of the BOP, walked away from the RRC without permission. On September 10, 2020, a grand jury indicted Lujan on one count of escape, in violation of 18 U.S.C. § 751(a). Lujan was apprehended on January 19, 2021. He pleaded guilty to the indictment without the benefit of a plea agreement on June 22, 2022.

A United States Probation Officer prepared a presentence report ("PSR") in anticipation of sentencing. The initial PSR calculated Lujan's base offense level at 13, pursuant to U.S.S.G. § 2P1.1(a)(1). The PSR reduced Lujan's offense level by six levels—two for acceptance of responsibility and four pursuant to U.S.S.G. § 2P1.1(b)(3), the escape guideline, because Lujan escaped from a "non-secure custody of a community corrections center, community treatment center" or "halfway

house." R. Vol. II at 17. The reductions left Lujan with a total offense level of 7 and a criminal history category of V, resulting in a Guideline range of twelve to eighteen months' imprisonment.

The government objected to the calculation of Lujan's offense level. It argued that Lujan was disqualified from the four-level reduction under § 2P1.1(b)(3) because he had committed state offenses while escaped from custody. The government included in its objection (1) a state arrest warrant detailing Lujan's robbery of two people at gunpoint, (2) Lujan's booking sheet, (3) related court papers, (4) written witness statements, and (5) the order dismissing the state case for failure to secure appearance of the defendant. Lujan opposed the government's objection on the grounds that he was not convicted of any crime, and that the witness statements were unreliable hearsay. The Probation Officer filed a second PSR in response to the objection that removed the four-point reduction, changing Lujan's ultimate offense level to 11. With an offense level of 11 and a criminal history category of V, Lujan's Guideline range subsequently became twenty-four to thirty months' imprisonment.

The district court held a sentencing hearing on October 11, 2022, to resolve the dispute. The government called Detective Natasha Nieto of the Bernalillo County Sheriff's Office to testify about her investigation into the alleged crimes committed by Lujan. It also submitted an audio recording containing the alleged victims'

statements to Detective Nieto.  The statements of the two alleged victims, M.O. and

I.R., and Detective Nieto's testimony pieced together the following picture:[1]

> Between three-thirty and four in the morning on August 26, 2020,
> M.O. and I.R. were stopped at an ATM on 4th Street in Albuquerque,
> New Mexico, to get money for the casino when a car pulled up and
> Defendant Paul Lujan—also known as, "Chubbs"—got out of the
> vehicle. M.O. recognized Defendant as her cousin and greeted him. Four
> other people were with Defendant in the car. One of the women who
> was with Defendant needed to use the restroom, so Defendant and his
> four companions followed M.O. and I.R. back to M.O.'s nearby
> residence . . . Not long after, Defendant pulled out a gun and pointed it
> at M.O. Defendant instructed M.O. and I.R. to empty out their pockets.
> Defendant then told I.R. to unplug M.O.'s television and carry it outside
> to M.O.'s car. After placing the television in the car, I.R. returned to the
> living room. Once I.R. was back in the living room, Defendant ordered
> M.O. and I.R. to lie on their stomachs and put their hands behind their
> backs. Defendant and another man tied I.R.'s and M.O.'s hands.
> Defendant then told M.O. and I.R. that if he saw any shadows following
> him, he would "blast" them. Defendant took M.O.'s car, wallet, car
> keys, television, shoes, watches, dartboard, and cell phone; Defendant
> also took I.R.'s two cell phones and his wallet.

R. Vol. I. at 70–71.  Detective Nieto also testified that it was not until about thirteen

hours later that a call was made to the police, and that it was either M.O.'s father or

grandfather who made the call.  M.O. and I.R. did not call the police because they

feared retaliation from the robbers and because their cell phones had been stolen.

Detective Nieto's testimony was primarily a recounting of what M.O. and I.R. stated

in the audio recordings.  The audio recording also captured officers' discovery of

knotted television cords at M.O.'s residence, which M.O. stated were the cords that

---

[1] These facts are taken from the district court's "Memorandum and Order
Resolving PSR Objection and Setting Defendant's Guidelines Sentencing Range."
Neither party disputes the district court's characterization of the content of the
testimony.  R. Vol. I at 65–72.

Lujan and another man used to tie her up.  Detective Nieto obtained an arrest warrant for Lujan based on M.O.'s and I.R.'s statements.  Lujan was subsequently arrested.

The district court found that Detective Nieto's testimony and the statements of the two victims had sufficient indicia of reliability to support a finding by a preponderance of the evidence that Lujan committed the state offenses while on escape status.  The district court declined to apply the four-level reduction to Lujan's base offense level under § 2P1.1(b)(3) and sentenced Lujan to a term of forty-two months' imprisonment.  Lujan timely appealed on the basis that the statements before the district court were unreliable hearsay.

## II.

Section 2P1.1(a)(1) provides an offense level of 13 for a defendant who escapes from custody or confinement "by virtue of an arrest on a charge of felony, or conviction of any offense."  The offense level is decreased by four levels "if the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility . . . [p]*rovided* [] that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more."  U.S.S.G. § 2P1.1(b)(3) (emphasis in original).  The standard for factual findings that increase the Guideline range of a sentence is preponderance of the evidence.  *United States v. Robertson*, 946 F.3d 1168, 1171 (10th Cir. 2020).

Lujan asserts that the district court erred in considering the statements of M.O. and I.R. and the testimony of Detective Nieto, which he argues were unreliable

hearsay.[2]  "While the due process clause protects a defendant's right not to be sentenced on the basis of materially incorrect information, hearsay statements may be considered at sentencing if they bear 'some minimal indicia of reliability.'"  *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008) (quoting *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995)).  Corroborating evidence "is often key to determining whether a statement is sufficiently reliable."  *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013).  Lujan argues that the government simply relied upon the alleged victims' unsworn statements and Detective Nieto's summary of these statements, and that there was no independent corroborating evidence that ties him to the state offenses he allegedly committed while on escape status.

Lujan relies largely on *United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995), to argue that the hearsay before the district court was unreliable.  In *Fennell*, we determined that the evidence before the district court was insufficient to apply a sentence enhancement for possession of a machine gun.  *Id.*  The district court had relied solely on an unsworn telephone statement by the defendant's estranged girlfriend to a probation officer in which she alleged that Fennell had fired his machine gun at her.  *Id.* at 813.  We found her statement "insufficiently reliable because the girlfriend did not prepare a sworn affidavit, the interviewing officer was

---

[2] The parties disagree on the standard of review.  Lujan contends that we must review the issue de novo, while the government urges us to review for clear error.  We need not determine which standard of review applies in this case because Lujan's argument fails under either standard.

not able to observe her demeanor, and there was no other corroborating evidence."
*Ruby*, 706 F.3d at 1229 (characterizing *Fennell*).

The evidence here is far more reliable than that in *Fennell*. First, while Lujan emphasizes that Detective Nieto was simply repeating what M.O. and I.R. told her, he neglects to acknowledge that M.O. and I.R. were interviewed individually and corroborated each other with detailed and consistent accounts. Second, there is no indication that M.O. or I.R. had reason to lie, unlike Fennell's estranged girlfriend, particularly considering that neither of them placed the call to the police. Third, Detective Nieto had the opportunity to observe the victims and form her own opinion regarding their veracity, unlike the officer in *Fennell*. *See also United States v. Farnsworth*, 92 F.3d 1001, 1010 (10th Cir. 1996) (finding hearsay evidence distinguishable from *Fennell* when the arresting officer took the victim's statement in person). Fourth, when officers responded to M.O.'s residence, not only were M.O.'s television, car, and cell phone missing, but an officer recovered the knotted television cords used to tie M.O.'s hands.

Lujan attempts to distinguish the present case from others in which we found appropriate indicia of reliability. For example, he argues that *Cook* is dissimilar because in that case, (1) the defendant was apprehended soon after the crime, (2) the weapon used by the defendant was recovered, and (3) the victims called the police. 550 F.3d at 1294–97. He points out that none of those factors is present in his case. We are unpersuaded for two reasons. First, the factors that Lujan makes much of do not bear on the reliability of the hearsay evidence. The victims in the present case

7

did not call 911 because Lujan had threatened to kill them, and because he had stolen

their phones.  This does not make their statements less reliable, especially

considering that the time between the robbery and the 911 call was a mere thirteen

hours.  Second, in *Cook* we distinguished *Fennell* explicitly on the basis that the

responding officers had the opportunity to observe the witnesses' demeanor, and that

the witnesses' accounts corroborated each other and remained consistent.  *Cook*,

550 F.3d at 1296.  Those factors are fully present here.

Lujan similarly directs us to *United States v. Leib*, 57 F.4th 1122 (10th Cir.

2023), arguing that the present case does not have as many corroborating

circumstances.  In *Leib*, we found that the defendant's mother's statement bore

sufficient indicia of reliability.  But *Leib* does not set the floor for what may

constitute the minimum indicia of reliability.  Rather, in *Leib* we simply stated that

"the totality of the circumstances [] corroborated Norma Leib's [unsworn] statement

that Mr. Leib shot into the floor.  *Fennell*, then, is distinguishable."  57 F.4th at 1129.

The district court, therefore, did not err when it relied on Detective Nieto's

testimony and the statements of the two victims to determine that the United States

established by a preponderance of the evidence that Lujan committed state offenses

while escaped from BOP custody.[3]  The four-level reduction under § 2P1.1(b)(3) was

properly denied.

---

[3] Lujan also argues that the evidence before the district court was not reliable because the government never actually identified Lujan as the assailant.  The district court found that the witnesses "all independently identified Defendant Paul Lujan as the man who committed the alleged state offenses on August 16, 2020."  R. Vol. I

**IV.**

For these reasons, we affirm the judgment of the district court.

Entered for the Court

Allison H. Eid
Circuit Judge

---

at 70. Lujan disputes the district court's finding and contends that consistent references by Detective Nieto, M.O., and I.R. to "Chubs," M.O.'s "cousin," or "Paul" do not confirm that Lujan was the assailant, only that "they were consistent in referring to that individual by those nouns." Aplt. Br. at 13. Yet, Lujan's first name is Paul, he is M.O.'s cousin, and he goes by the gang name "Chubbs.". R. Vol. II at 15. Lujan's argument that Detective Nieto and the two victims did not identify him is meritless and we can find no error in the district court's determination.